Docket Nos. 84271, 84282 cons.–Agenda 35–May 1998.

ANSEL RAY JORDAN, Appellant, v. NATIONAL STEEL CORPORATION 
et al.
 (National Steel Corporation 
et al.
, 

Appellees).

Opinion filed October 1, 1998.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, Ansel Ray Jordan, filed suit in the circuit court of Madison County for injuries suffered while working as a pipefitter at a construction site. Plaintiff alleged that he injured his back after grabbing a defective handrail at the site. Defendants at trial were National Steel Corporation (National), the owner of the site; Davy McKee Company (McKee), a major subcontractor that had general control of the site; and Clayco Construction Company, a subcontractor that installed the handrail. None of the three named defendants was plaintiff's employer.

The jury returned a verdict in favor of all defendants. Plaintiff filed a motion for a new trial, asking for a new trial only with respect to defendants National and McKee. The circuit court denied plaintiff's motion for a new trial. On appeal, the appellate court found that the jury's verdict was against the manifest weight of the evidence and remanded for a new trial. No. 5–94–0666 (unpublished order under Supreme Court Rule 23). Defendants National and McKee filed petitions for leave to appeal. We allowed the petitions (166 Ill. 2d R. 315) and consolidated the appeals. Clayco Construction Company is not involved in this appeal. We reverse the appellate court.

BACKGROUND

On October 12, 1990, plaintiff was working at a construction site of a continuous caster facility in Granite City, Illinois. The facility consisted of a seven-story building that enclosed a 100-

foot-tall caster machine for the manufacture of steel. Plaintiff was working as a pipefitter for Corrigan Company, a subcontractor on the project.

At trial, plaintiff testified that, on October 12, he was working at the facility with another individual, Bernard Mundy. Plaintiff testified that he and Mundy were checking the grease lines within the caster for leaks. Plaintiff and Mundy were walking on a catwalk several floors above the ground. Plaintiff testified that there was dim temporary lighting in the area and that he and Mundy used flashlights to make their way. They reached a series of rungs and steps leading to a higher level. As plaintiff started up the rungs and steps, he grabbed the adjoining handrail with his left hand. Plaintiff testified that the handrail shifted 10 to 12 inches and that he did not expect the handrail to shift in that manner. He fell backwards and hit his back against the handrail. After plaintiff hit the handrail, he felt a dull pain in his back. At that time, Mundy was behind plaintiff and prevented him from falling. Plaintiff told Mundy that his back hurt, and later that day, plaintiff completed an accident report form, which he gave to his foreman. Plaintiff testified that the pain in his back increased over the next several days and that he also felt pain in his right hip and leg. Plaintiff sought medical attention and ultimately had surgery performed on his back. Plaintiff's condition improved after the surgery.

On cross-examination, plaintiff stated that, after the injury, he continued his work for the rest of the day. Plaintiff further testified that he worked for several days after the injury. Plaintiff did not complain about the handrail to Mundy or others. Plaintiff also testified that there were a number of similar removable handrails throughout the caster and that such handrails are common at job sites. He testified that they are not intended to move and that he had had no previous problems with any handrails.

Plaintiff also presented the evidence deposition of Dr. Harlen Hunter. Dr. Hunter stated that he was a doctor specializing in the field of orthopedic surgery. He testified that plaintiff came to see him on October 29, 1990. Plaintiff told him that he hurt his back on a handrail at work. Plaintiff also told him that his back pain was getting progressively worse and that he felt pain in his right leg. After examining plaintiff, Dr. Hunter determined that plaintiff had a herniated disc in his back. On November 16, 1990, Dr. Hunter performed surgery and removed the herniated disc. After the operation, plaintiff's condition improved. Dr. Hunter stated that plaintiff's activity should be limited by pain, that plaintiff should avoid any heavy lifting, and that plaintiff should avoid the possibility of climbing to heights. Dr. Hunter stated, in his opinion, that these limitations were permanent. Dr. Hunter also opined that the accident, as related to him by plaintiff, was the cause of the herniated disc.

In defense, National called Bernard Mundy to testify. Mundy testified that he was a self-employed mechanical engineer. Mundy had not been an employee of any of the defendants and was testifying in response to a subpoena. Mundy had been hired to check the lubrication system for the continuous caster. Mundy testified that plaintiff was one of the pipefitters helping him on the project. Mundy testified that, on October 12, 1990, he and plaintiff were checking different points of the lubrication system.

Mundy testified that he and plaintiff were walking on a catwalk having a permanent handrail on the left side. Mundy distinguished between permanent handrails and temporary, removable handrails at the job site. Permanent handrails are welded to the superstructure and do not move. In contrast, removable handrails fit into sockets and will ordinarily have some play in them. They can be removed to permit access to machinery and the movement of equipment and personnel.

Plaintiff and Mundy approached a set of steps leading up to the next chamber. Mundy testified that the handrail next to the steps was a removable handrail. Mundy stated that the handrail moved three to six inches when plaintiff grabbed it. Mundy testified that a removable handrail that is three feet above the base will ordinarily move three to six inches. Mundy stated that, as plaintiff ascended the steps, plaintiff suddenly went down and to the left. Mundy testified that plaintiff did not fall backwards and did not hit his back against anything. Mundy testified that he and plaintiff continued their work after the incident, and plaintiff did not claim there was anything wrong with the handrail. Mundy did not report any problem with the handrail because, in his opinion, the removable handrail functioned the way it would be expected to function. Mundy testified that both he and plaintiff knew removable handrails were used at the job site. According to Mundy, the handrail did not move beyond a normal expected range.

On cross-examination, Mundy testified that he grabbed and steadied plaintiff after plaintiff lost his balance. Plaintiff told Mundy later in the day that plaintiff had hurt his back. Later that day, Mundy reported the incident to the superintendent at McKee. Mundy testified that plaintiff grabbed a removable handrail that shifted, as would be expected. The removable handrail shifted more than a permanent handrail would. The removable handrail failed to prevent plaintiff from losing his balance. Mundy also testified that he had built permanent and removable handrails for 20 years and was therefore familiar with them.

After hearing the evidence, the jury was instructed on a premises liability theory. With respect to both National and McKee, the jury was instructed that plaintiff had the burden of proving six propositions: (1) that there was a condition on the property that presented an unreasonable risk of harm to persons on the premises; (2) that defendants knew, or in the exercise or ordinary care should have known, that the condition of the property involved an unreasonable risk of harm to persons on the premises; (3) that defendants should have anticipated that persons on the premises would not discover or realize the danger or would otherwise fail to protect themselves against it; (4) that defendants performed some negligent act or omission; (5) that plaintiff was injured; and (6) that the condition of the property was a proximate cause of the injury to plaintiff. The jury was also instructed on a count of ordinary negligence against McKee only. Under this instruction, plaintiff was required to prove that McKee performed a negligent act or omission, that plaintiff was injured, and that the negligence of McKee was the proximate cause of the injury.

The premises liability theory against both defendants and the count of ordinary negligence against McKee each required proof of negligent acts or omissions. The jury was instructed on alleged overlapping negligent acts or omissions by National and McKee. Plaintiff alleged that National was negligent for failing to adequately inspect and supervise the work, failing to warn plaintiff of a hazardous condition, failing to adequately coordinate the work performed by contractors and subcontractors, and failing to restrict use of the rungs and steps. Plaintiff alleged that McKee was negligent for failing to adequately inspect the work done by subcontractors under its control, failing to adequately supervise subcontractors under its control, failing to warn individuals about the danger, and failing to restrict the use of the rungs and steps. No party has raised any specific challenge to these jury instructions.

After deliberation, the jury returned a verdict in favor of all defendants. On September 2, 1994, plaintiff filed a post-trial motion, seeking a new trial against National and McKee. The circuit court denied the motion. Plaintiff appealed the circuit court's denial of the post-trial motion to the appellate court.

The appellate court found that the jury's verdict was against the manifest weight of the evidence and reversed and remanded for a new trial. In reaching this conclusion, the court evaluated each of the six propositions that plaintiff was required to prove. The court stated that, although there was a dispute as to the exact details of the accident, certain essential facts were undisputed. The evidence at trial showed that plaintiff suffered a back injury following an accident at the work site. The evidence also showed that the removable handrail swayed when used by plaintiff and plaintiff was not warned about any hazard in using the removable handrail.

Justice Chapman dissented. He stated that plaintiff presented sufficient evidence to warrant consideration by a jury. When the jury considered the matter, however, plaintiff lost. Although plaintiff presented evidence supporting his claims, this evidence did not require the jury to find in his favor. Justice Chapman stated that the majority had usurped the jury's function of deciding whether a duty of care was violated and that the majority substituted its judgment for the jury's on disputed questions of fact.

ANALYSIS

On appeal, National and McKee argue, 
inter alia
, that the jury’s verdict was not against the manifest weight of the evidence.

They reiterate some of the arguments made by the dissent in the appellate court. They also rely on this court’s decision in 
Maple v. Gustafson
, 151 Ill. 2d 445 (1992). 

In 
Maple
, this court addressed the general principles that apply to review of the circuit court's denial of a motion for new trial. This court first discussed the deference given to a jury verdict when the verdict is challenged:

“An initial step in analyzing the issue before us is to determine the authority of the jury, trial court, and appellate court, and their relationship to one another. Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony. [Citation.] A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels that other results are more reasonable. [Citations.] Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way. [Citations.]” 
Maple
, 151 Ill. 2d at 452-53.

This court later stated the standard the circuit court should use when deciding whether to grant a new trial. The circuit court should only set aside the verdict if it is against the manifest weight of the evidence. 
Maple
, 151 Ill. 2d at 454. “ `A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' [Citations.]” 
Maple
, 151 Ill. 2d at 454; see also 
Leonardi v. Loyola University
, 168 Ill. 2d 83, 106 (1995). This court further emphasized the deference to be given the circuit court's ruling on the motion for new trial. This deference is based on the fact that the circuit court had the benefit of personally observing and gauging the credibility of the witnesses. 
Maple
, 151 Ill. 2d at 455-

56. This court then applied these principles to the case before it, determined that there was sufficient evidence supporting the jury verdict, and found that the circuit court correctly denied the motion for a new trial.

In the instant case, plaintiff alleged that defendants' liability arose due to a dangerous condition on the premises. In order to prove premises liability, plaintiff was required to prove some negligent conduct by National and/or McKee in connection with the dangerous condition. Plaintiff separately alleged a theory of ordinary negligence by McKee predicated on McKee's activities at the site.

With respect to premises liability, plaintiff was required to prove six propositions. First, plaintiff was required to prove the existence of an unreasonably dangerous condition on the premises. Plaintiff put on no expert testimony about handrail and safety issues. Aside from his own testimony, plaintiff presented no evidence that the removable handrail was unreasonably dangerous or violated any industry or safety standard. In defense, Mundy testified that the handrail moved three to six inches and that this is a normal characteristic of removable handrails. Mundy testified that he was familiar with handrails because he had been building them for 20 years. The jury may have viewed Mundy as an impartial witness and given his testimony greater weight because Mundy was not an employee of any of the defendants. Based on the evidence, the jury could have rationally found that the handrail was not an unreasonably dangerous condition.

Second, plaintiff was required to prove that defendants knew or should have known that the handrail posed an unreasonable risk of harm. Plaintiff testified that he did not know if defendants had any notice of any problems with the handrail. Plaintiff presented no evidence that anyone had previously reported a defective handrail to defendants. Mundy testified that he did not report the handrail because he did not consider the handrail defective. After the incident, plaintiff himself did not inform defendants that the handrail was defective. Accordingly, the jury could have rationally determined that defendants had no notice that the handrail posed an unreasonable risk of harm.

Third, plaintiff had to prove that defendants should have anticipated that individuals would fail to recognize the danger or would fail to protect themselves against it. Mundy testified that removable handrails were common at the work site and were common in the industry. Mundy testified that it is commonly known that such handrails have some play in them. Plaintiff had extensive experience in working at industrial sites. Plaintiff conceded that he had seen such handrails at the caster work site and on other jobs. Based on the evidence, the jury could reasonably have concluded that plaintiff recognized the danger and could have protected himself against it.

Fourth, plaintiff was required to prove some negligent act or omission by National or McKee. National presented evidence and argument that it was not negligent by disputing the amount of control it was required to exercise over the work site, pursuant to contract. McKee presented evidence and argument that it was not negligent because the defect, if any, was a design defect. McKee did not design the caster or specify the use of removable handrails. Mundy testified that the use of a removable handrail was an engineering decision and he would not second-guess this design decision. McKee argued that it would have no reason to believe the handrail was a dangerous condition. Based on this evidence and the evidence previously discussed, the jury could reasonably have determined that plaintiff failed to prove his case.

There was sufficient evidence to support a jury finding for defendants on any of the issues addressed above. Similarly, there was sufficient evidence to support a finding for McKee on plaintiff's negligence count. The jury was in the best position to evaluate the evidence and make inferences based on the evidence. We find that the jury's verdict was not against the manifest weight of the evidence. Accordingly, the circuit court did not abuse its discretion in denying the motion for a new trial. See 
Maple
, 151 Ill. 2d at 455.

CONCLUSION

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed.