PATRICIA MUELLER, Plaintiff-Appellant, v. PHAR-MOR, INC., d/b/a Phar-Mor, Defendant-Appellee and Third-Party Plaintiff (Besam Automated Entrance Systems, Inc., Third-Party Defendant).

First District (2nd Division)   No. 1—98—4002

Opinion filed December 29, 2000.—Rehearing denied February 13, 2003.

Lawrence Hyman and Erika Cunliffe, both of Chicago, for appellant.

Sandra Young and D. Timothy McVey, both of Purcell & Wardrope, Chtrd., of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Patricia Mueller filed a complaint in the circuit court seeking compensation for injuries she sustained when she was struck by a sliding electric glass door while entering a store owned by defendant Phar-Mor, Inc. (Phar-Mor). A jury trial was commenced. At the close of plaintiff's case in chief, the trial court granted defendant's motion for a directed verdict, finding that plaintiff had failed to prove the notice element of her premises liability claim. The court dismissed plaintiff's complaint in its entirety. Plaintiff now appeals, contending that the trial court erred in granting a directed verdict and committed various errors in its pretrial and trial rulings.

The facts are as follows. On the evening of February 6, 1994, plaintiff and her husband attempted to patronize a Phar-Mor store in Skokie, Illinois. The store's entrance consisted of two automatic sliding glass doors and two glass side panels which were adjacent to the sliding doors. The side panels were stationary by design but could be popped out in case of emergencies.

As plaintiff and her husband approached the entrance, they noticed that the side panel on the left side of the sliding glass doors was not in place, leaving an opening where it should have been. As plaintiff attempted to pass through the side panel opening, the sliding doors activated, striking plaintiff in the right side. The sliding door pushed plaintiff into the left side of the open side panel frame, and then struck her a second time, pinning her against the door's outer frame. Plaintiff was able to extricate herself from the door by twisting her body and lunging forward.

At trial, Boris Sigal, a customer who witnessed plaintiff being struck by the door, testified that he went to the store's customer service counter to get help. Sigal further testified that after he informed the employee behind the counter that he had just seen a woman get hit by the sliding door, the employee told him that such an event had occurred before. In a subsequent sidebar, the trial court ruled that the statement made by the Phar-Mor employee to Sigal was inadmissible pursuant to Supreme Court Rules 213(f) and (g) (177 Ill. 2d Rs. 213(f), (g)) because plaintiff had not advised defendant prior to trial of such testimony by Sigal. The court then instructed the jury that it was to disregard Sigal's testimony regarding the statement.

Dennis Kiedrowski, the general manager of the Phar-Mor store at the time of the incident, estimated that there were probably about 20 employees working in the store at the time plaintiff was injured. He

testified that there was a single entrance to the store. About once a month he would check the side panel doors by pushing them open from the inside. He testified that the emergency door panels could be pushed out with not much force. Although plaintiff made an offer of proof, Kiedrowski was not allowed to testify that he found the side panel doors open three or four times in the six months he worked at the store.

Plaintiff's husband at the time of the incident, Peter Mueller, testified that a store manager came and spoke with him and plaintiff after plaintiff was injured. The manager first said of the door: "[O]h, it's off its track again." Peter Mueller had to ask the manager for a piece of paper in order to make a report. When the Muellers left the store, Peter saw the store manager and some other people trying to fix the side panel door.

Daniel Spychalla, the co-manager of the Phar-Mor at the time of the incident, testified that the side panel doors were for emergency use.

Ronald Gosney was a service technician employed by the company with which Phar-Mor contracted to maintain the doors and repair them when necessary. He testified that the side panel doors were stationary with the exception that they could be pushed out in the event of an emergency. Gosney made service calls to Phar-Mor on January 27, 1994, just prior to the incident, and on February 22, 1994, two weeks after the incident. At the completion of each call, Gosney noted that the doors appeared to be working properly. When Gosney went to Phar-Mor to check the operation of the doors on February 22, 1994, no one employed by defendant informed him that a woman had recently been injured in the front door or that the sliding doors had allegedly operated when the side panel was out of place. At the conclusion of each service call, Gosney would go over certain safety tests and door functions with Phar-Mor personnel, including instruction on how to do an emergency break-out of the side panel doors.

Dr. George Prieto testified that he treated plaintiff's injuries in the years following her being struck by the sliding door. He diagnosed plaintiff as having trochanteric bursitis, which is an irritation or inflamation in an area on the thigh. At different times, plaintiff was treated with oral anti-inflammatory medication, physical therapy, cortisone injections, and, eventually, surgery. After all of the treatment, plaintiff continues to have chronic pain in the area of her thigh.

George Tune, an operations manager of the company that had contracted to repair and maintain the doors, testified regarding the operation of the four-panel door system at the Phar-Mor store in question. Among other things, Tune testified that the system was designed

so that the sliding doors should have been inoperable if a side panel door had been removed.

Plaintiff filed suit against defendant on a theory of simple negligence and premises liability. Defendant, in turn, filed a third-party action against the company that had performed maintenance and repair work on the doors.

Just prior to trial, plaintiff made a motion *in limine* for leave to amend the complaint to allege application of the doctrine of *res ipsa loquitur*. The court denied plaintiff's motion, holding:

> "I don't see this as a res ipsa case. I don't see the side panel door being out as being in any way related from what I've heard to the sliding doors in the middle. And *** I think, Counsel, your suggestion that the jury be offered options of how to view this in effect makes the jury speculate and engage in conjecture as to how this possibly could have happened when they don't have any basis for that."

The parties also brought a number of other motions *in limine* before the court. Among other things, the trial court granted motions barring plaintiff from introducing evidence showing that there was any defect in the door system, evidence that defendant had notice of any defective condition in the door system, evidence regarding other damage or prior repairs to the door system, evidence of facts regarding any incidents involving the door system prior to January 27, 1994 (the date of the maintenance company inspection shortly before the incident), and evidence regarding the length of time the side panel had been open prior to the incident involving plaintiff. The court also barred Kiedrowski's testimony that he had found the side panel door open on a number of occasions in the months preceding the incident involving plaintiff but had not reported any of these incidents to the maintenance company and barred the introduction of two checklists used by the maintenance company in its inspections of the door system.

Near the close of plaintiff's case in chief, plaintiff's counsel again raised the issue of *res ipsa loquitur*, maintaining that such a count should be allowed to be added in order to conform to the proof presented. The trial court again declined to allow such a count to be added, holding that it did not believe it had been shown that defendant had superior knowledge about the cause of the incident or that it had been shown that the incident and resulting injury were of the kind which ordinarily would not occur without someone's negligence. The trial court also noted that it would be fundamentally unfair to defendants to allow such a count to be added where they did not know about the count until it was proposed at the time of trial.

At the close of plaintiff's case in chief, defendant moved for a directed verdict, maintaining that there had been no proof of an unreasonably dangerous condition that defendant had knowledge of prior to the incident. Specifically, defendant argued that there was no proof that defendant had any prior knowledge that the sliding doors would operate when one of the side panel doors was open. The trial court held:

> "In this case, the plaintiff has failed to prove that the defendants knew or in the exercise of ordinary care should have known that the condition of the property involved an unreasonable risk of harm to persons on the premises and that they should have anticipated persons on the premises would not discover or realize the danger or otherwise fail to protect themselves from it since the defendants had absolutely no knowledge of any possible malfunction of the sliding doors.
>
> There's been no evidence that they were ever in the position of having to call repairs for that. There's no evidence that anyone ever saw that happen from the defendant, Phar-Mor store. There's no evidence it ever was reported to the Phar-Mor store in the past. The missing side light is really a side issue, so to speak, because the real issue is the operation of the sliding doors. And the plaintiff has failed to produce any evidence that the defendant, Phar-Mor, did anything to ignore prior notice because the evidence is that they have not received prior notice."

The trial court then granted defendant's motion for directed verdict. Plaintiff now appeals, contending that the trial court erred in granting defendant's motion for a directed verdict, erred in denying her request to add a count to her complaint concerning *res ipsa loquitur,* and committed various evidentiary errors that deprived her of a fair trial.

■ Plaintiff contends that the trial court erred in basing its decision to direct a verdict in favor of defendant on plaintiff's alleged failure to show that defendant had notice of a defective condition related to the doors. A directed verdict should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). That same standard is used to determine, on review, the propriety of the trial court's action in granting a directed verdict. *Harris Trust & Savings Bank v. Otis Elevator Co.,* 297 Ill. App. 3d 383, 392, 696 N.E.2d 697 (1998).

■ After plaintiff completed her case in chief, defendant moved for a directed verdict on the basis that there had been no proof of an unreasonably dangerous condition that defendant had knowledge of

prior to the incident. Specifically, defendant argued that there was no proof that defendant had any prior knowledge that the sliding doors would operate when one of the side panel doors was open. The trial court, citing the six factors for proving a premises liability action set forth in *Jordan v. National Steel Corp.*, 183 Ill. 2d 448, 454, 701 N.E.2d 1092 (1998), granted defendant's motion. In *Jordan*, 183 Ill. 2d at 454, our supreme court noted that, in a premises liability action, a plaintiff has the burden of proving (1) the existence of a condition that presents an unreasonable risk of harm to persons on the premises; (2) that the defendants knew, or should have known, that the condition posed an unreasonable risk of harm; (3) that the defendants should have anticipated that individuals on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it; (4) a negligent act or omission on the part of the defendant; (5) an injury suffered by the plaintiff; and (6) that the condition of the property was a proximate cause of the injury to the plaintiff. In granting defendant's motion for a directed verdict, the trial court held that plaintiff had failed to show that defendant knew or should have known that having one of the side panels by the door out of place created an unreasonable risk of harm to customers. The parties agree that constructive or actual notice is a fundamental element of a premises liability claim.

Plaintiff contends that, under a premises liability theory, she offered sufficient evidence of actual or constructive notice to withstand defendant's motion for a directed verdict. In so arguing, plaintiff first maintains that the trial court's reliance on *Jordan* was misplaced because there, as opposed to the instant case, the jury's right to decide the case was not in issue. In *Jordan*, the plaintiff injured his back when, while working at a construction site, he lost his balance after grabbing an allegedly defective temporary handrail. Plaintiff brought suit against various parties, alleging premises liability and negligence. A jury found for the defendants. The appellate court, in an unpublished order, reversed and remanded for a new trial, finding that the jury's verdict was against the manifest weight of the evidence. The Illinois Supreme Court reversed the appellate court and allowed the jury's verdict to stand. The supreme court set forth the six propositions a plaintiff must prove in order to succeed in a premises liability action and found that, based on the evidence, the jury could reasonably have found for defendants on several of the propositions. *Jordan*, 183 Ill. 2d at 457.

We find plaintiff's attempt to distinguish *Jordan* on the fact that that case went to the jury to be unpersuasive. The trial court's discussion of the *Jordan* decision here was largely in the context of it being

a recent supreme court case setting forth and applying the six-factor test for a premises liability action. In other words, the trial court's grant of a directed verdict here was based on its finding that plaintiff had failed to present enough evidence to meet certain of the requirements set forth in the *Jordan* test, rather than on the *Jordan* decision itself.

Plaintiff also maintains that the quantum of evidence presented by the plaintiff in *Jordan* was substantially weaker than that presented by her in the instant case. According to plaintiff, she "presented considerable evidence to support her claim that the defendant was probably responsible for or at least knew that one of the side panels was not where it was supposed to be on the day that plaintiff suffered her injury." Defendant responds that even assuming that based on the evidence presented the jury could have inferred here that some Phar-Mor employee must have known that the side panel had been removed, plaintiff lacks any evidence that anyone knew an open panel presented an unreasonable risk of harm. We agree. Knowledge of the open side panel is insufficient where there was no evidence that such a condition would cause the sliding doors to strike a person walking through the open panel. There was no testimony of any previous incidents of the sliding doors activating while a side panel was out of place. In fact, there was testimony that, when a panel is out of place, the sliding glass doors should be inoperable.

Plaintiff also contends that the trial court's grant of a directed verdict was in error because it treated plaintiff's complaint exclusively as a premises liability action requiring actual or constructive notice to defendant of a risk of harm.

■ The parties agree that, in addition to a premises liability claim, plaintiff's complaint also alleged simple negligence on the part of defendant. "The necessary elements of proof in a cause of action for negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach." *Arroyo v. Chicago Transit Authority*, 268 Ill. App. 3d 317, 325, 643 N.E.2d 1322 (1994). Plaintiff maintains that under a negligence, rather than a premises liability theory, she was not required to demonstrate actual or constructive notice so long as she offered evidence sufficient to support an inference that defendant's negligent acts or omissions had produced the condition that caused her injury. Plaintiff cites to several cases in support of the above contention. See *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113, 148 N.E.2d 434 (1958); *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 700 N.E.2d 212 (1998); *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149, 650 N.E.2d 258 (1995); *Piper v. Moran's Enterprises*, 121 Ill. App.

3d 644, 459 N.E.2d 1382 (1984). Those cases ask whether or not the instrumentality causing a plaintiff harm was related to the defendants's business. See, e.g., *Wind*, 272 Ill. App. 3d at 156; *Piper*, 121 Ill. App. 3d at 652. Those cases further hold that where the plaintiff has offered some slight additional evidence, either direct or circumstantial, from which a jury could infer that it was more likely that the defendant or its employees, rather than a customer, created the condition leading to the plaintiff's injury, the negligence issue may go to the jury without evidence showing defendant's knowledge or constructive notice of the condition. See *Wind*, 272 Ill. App. 3d at 155; *Piper*, 121 Ill. App. 3d at 652.

Plaintiff cites to the following in support of her negligence theory: evidence showing that the sliding doors and side panels were the only entrance to defendant's store, testimony that the panels were only to be opened in emergencies, testimony that defendant's employees had received instruction on how to open the side panel doors, the testimony of herself and her husband regarding the side panel being not only open, but not in place, and her husband's testimony that when he reported plaintiff's accident to an employee of defendant, he was essentially told that similar incidents had occurred before.[1] Thus, plaintiff concludes, even if she failed to show notice to defendant of an unreasonable risk of harm, she presented sufficient evidence pursuant to *Donoho, Wind, Reed,* and *Piper* to show that defendant's negligent acts or omission in connection with its maintenance, operation, control, and management of the doors were the proximate cause of her injuries.

We find the cases relied upon by plaintiff to be persuasive. There is no question here that the panel and sliding door system were related to defendant's business. Further, plaintiff has offered some slight additional evidence from which a jury could infer that it was more likely than not that the actions of defendant's employees created the condition leading to her injury by either opening the side panel door or failing to close it once it was open. The evidence showed that employees of defendant had been instructed in how to open the side panels. The employees controlled the door system and replaced the side panel after plaintiff was injured. The side panel was supposed to be open only in

---

[1] Plaintiff overstates the evidence when she argues that her husband was "essentially" told by a Phar-Mor employee that similar incidents had happened in the past. The record indicates that when Mr. Mueller informed the employee that plaintiff had been struck by the door, the employee responded "Oh, it's off its track again." What that comment actually meant is open to interpretation.

emergency situations but was open and possibly even completely removed at the time of the incident even though there was no emergency. We further note that the evidence showed there were approximately 20 employees of defendant on duty at the time of the incident.

Moreover, we believe that certain evidence that was relevant to the negligence count was barred by the trial court. Phar-Mor employee Kiedrowski testified in his deposition that he had found the side panel doors open on three or four occasions in the six months previous to the incident. On those occasions, he would close the side panel. The trial court barred Kiedrowski from testifying regarding those occasions at trial. The trial court also barred evidence showing that although the side panel was found open on a number of occasions, there was no record of anyone associated with Phar-Mor ever communicating that fact to the company that maintained and inspected the doors. This resulted in the doors not being tested during inspections with the side panels out to ensure that the sliding doors would not operate. Although the court, as discussed later in this opinion, may have properly excluded the above evidence as it related to a premises liability claim, the above evidence was relevant to plaintiff's negligence claim and should have been allowed.

Defendant summarily responds that the case should not have gone to the jury based on the negligence count because plaintiff failed to demonstrate any negligent acts or omissions on the part of defendant. Defendant, in support, cites to Phar-Mor's "frequent service calls" to the company that had contracted to maintain the doors. Prior to trial, however, defendant was successful in barring from evidence any testimony regarding service and maintenance calls to the store regarding the door system with the exception of a routine maintenance visit shortly before the incident and a similar visit shortly after the incident. Defendant, limited on its own motion to presenting evidence of only two service calls, cannot now assert that if it had presented its case it could have rebutted any evidence of negligence with evidence of "frequent" service calls. Further, there is no evidence that those maintenance visits included checks of whether the sliding doors could activate with a side panel removed and no evidence that anyone employed by defendant ever informed the company charged with maintaining the doors that such an event had occurred.

The trial court's grant of a directed verdict in favor of defendant is phrased in terms of the factors for analyzing a premises liability claim. The court did not address the negligence claim or the fact that in such a claim notice need not be shown. We find that plaintiff's evidence created a question of fact regarding defendant's negligence

and that defendant's motion for a directed verdict should not therefore have been entered on plaintiff's negligence count. The directed verdict is therefore reversed on that basis and the case remanded for a new trial.

■ Plaintiff next contends that various evidentiary rulings made by the trial court and the court's denial of her request to proceed under a theory of *res ipsa loquitur*, considered either together or separately, operated to so debilitate plaintiff's efforts to present her case that she was deprived of a fair trial. Where the cumulative effect of errors made by a trial court so deprives a party of a fair trial that the verdict may have been affected, a new trial is necessary. *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 184, 640 N.E.2d 948 (1994).

■ We will first address plaintiff's argument regarding the court's denial of her request to proceed under the doctrine of *res ipsa loquitur*. Our supreme court has described the doctrine as follows:

"When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. [Citations]. This in essence is the doctrine of *res ipsa loquitur*, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446, 448-49, 207 N.E.2d 305 (1965).

Prior to trial, plaintiff filed a motion *in limine* in which she sought leave to file an amended complaint alleging that defendant was negligent under the principle of *res ipsa loquitur* and asked for a jury instruction regarding that same principle. The trial court denied plaintiff's motion. Later, near the end of plaintiff's case in chief, plaintiff renewed her motion to add a *res ipsa* count and instruction. The trial court again denied plaintiff's request, holding that it did not believe it had been shown that defendant had superior knowledge about the cause of the incident or that it had been shown that the incident and resulting injury were of the kind which ordinarily would not occur without someone's negligence. The trial court also stated that it would be fundamentally unfair to defendants to allow such a count to be added where they did not know about the count until it was proposed at the time of trial.

According to plaintiff, she should have been allowed to proceed under a *res ipsa loquitur* theory where the side panels and electronic

doors owned and operated by defendant, and over which defendant maintained exclusive control, failed to operate in their intended manner, resulting in her injury. Plaintiff concludes that the trial court's denial of her attempt to avail herself of the doctrine substantially robbed her of the means to effectively present her case.

■ Pursuant to section 2—616 of the Code of Civil Procedure, amendments changing the cause of action or adding new causes of action may be made at any time before final judgment on just and reasonable terms. 735 ILCS 5/2—616(a) (West 1994). Further, "[a] pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs." 735 ILCS 5/2—616(c) (West 1994). A trial court's denial of leave to amend a complaint will not be reversed absent a clear abuse of discretion. *Strickland v. Communications & Cable of Chicago, Inc.*, 304 Ill. App. 3d 679, 686, 710 N.E.2d 55 (1999). In determining whether the trial court abused its discretion in denying plaintiff's request to amend her complaint, we look at (1) whether the proposed amendment would cure a defect in the pleading; (2) whether the defendant or other parties would suffer prejudice or surprise due to the proposed amendment; (3) whether the proposed amendment was timely; and (4) whether there were earlier opportunities to amend the pleading. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211 (1992).

■ We first note that plaintiff has made a persuasive case for the application of the doctrine of *res ipsa loquitur* under the facts of this case by citing authority from other states in which the doctrine was applied where persons were injured by automatic doors. See, *e.g.*, *Brewster v. United States*, 542 N.W.2d 524 (Iowa 1996) (doctrine found to apply where injury was caused by automatic sliding door); *Brown v. Scrivner, Inc.*, 241 Neb. 286, 488 N.W.2d 17 (1992) (doctrine applied where plaintiff injured by malfunctioning automatic door). We find, however, that the trial court did not abuse its discretion in denying plaintiff leave to amend here, where one of the bases on which the court based its ruling was its finding that it would be fundamentally unfair to defendant to allow the amendment just prior to trial or at the close of plaintiff's case. There was no defect in the complaint that would have been cured by the proposed amendment. Although the request to amend was timely, as amendments are allowed at any time prior to final judgment, plaintiff had ample opportunity to amend the complaint at an earlier time. Finally, defendant would have been prejudiced in that it cannot be said with certainty that defendant would have presented the same defense, elicited the same deposition testimony, or failed to retain an expert witness had the complaint been amended to add a *res ipsa loquitur* count at an earlier time. We

therefore conclude that the trial court was within its discretion in denying plaintiff's eleventh-hour requests to amend her complaint immediately before trial (see *Arroyo*, 268 Ill. App. 3d at 323 (holding that circuit court did not abuse its discretion in denying plaintiff leave to amend the complaint immediately prior to trial)), and at the close of plaintiff's case in chief (see *Arroyo*, 268 Ill. App. 3d at 324; *Delzell v. Moore*, 224 Ill. App. 3d 808, 812, 587 N.E.2d 1131 (1992) (noting that "[o]nce the trial has commenced, leave to amend is properly denied where the facts upon which the proposed amendment are based were known to the party at the time of his original pleading and no good reason is offered for their not having been filed at that time")).

■ Plaintiff next contends that the trial court abused its discretion in granting various motions *in limine* made by defendant which barred plaintiff from presenting evidence which she argues was relevant to the issues in the case. Plaintiff cites to a number of pieces of evidence which, according to her, would have established notice to Phar-Mor that the door was defective had the evidence not been barred by the trial court as irrelevant. Among other things, plaintiff was prevented from introducing evidence that any mechanical defect existed in the door system and that defendant had notice of any defective condition in the door system, evidence of any mechanical difficulties Phar-Mor may have experienced with the door system prior to Gosney's inspection on January 27, 1994, and the length of time the side panel had been open prior to the incident involving plaintiff. Plaintiff also complains that she was barred from presenting the testimony of Kiedrowski that he had found the side panel door open on a number of occasions in the months preceding the incident involving plaintiff but had not reported any of these incidents to the maintenance company. Finally, plaintiff complains of being barred from introducing two checklists used by the maintenance company in its inspections of the door system. Plaintiff concludes that to the extent that her case lacked evidence of notice, the trial court's erroneous evidentiary rulings were to blame.

Plaintiff fails to explain how any of the evidence barred by the motions *in limine* would have established what the trial court determined to be lacking in her premises liability claim: notice to defendant that the side panel, when removed, created an unreasonable risk of harm through activation of the sliding doors. There was no evidence of a mechanical defect in the door system that might have caused plaintiff's injury and the trial court properly barred any evidence that defendant had notice of any defective condition. Although plaintiff had evidence of some mechanical problems with the door system prior to January 27, 1994, those problems did not concern the sliding doors activating

while the side panel was out of place and could not, therefore, establish notice to defendant. Further, the maintenance check of the doors on January 27, 1994, found the doors to be operating properly on that date. Evidence of previous occasions on which the side panel had been removed was irrelevant where there was no evidence that the sliding doors had activated with the side panel out of place other than when plaintiff was stuck. The trial court's ruling that it was unnecessary to report to the maintenance company that the side panels had been, on occasion, found out of place also seems reasonable where the Phar-Mor employees were able to rectify the problem by simply closing the panels and there was no evidence that the sliding doors had ever activated while the side panel was out of place.

In terms of plaintiff's negligence claim, however, it is possible that certain of the disputed pieces of evidence would have relevance to creating an inference that defendant or its employees, rather than a customer, were more responsible for creating the condition leading to plaintiff's injury. We have already held that this case must be remanded for a new trial on the negligence issue. We suggest, then, that the various motions *in limine* be reargued at that point in terms of their relevance to a claim brought under a simple negligence theory[2] and under a *res ipsa loquitur* theory if the complaint is amended on retrial to include such a count.

Finally, plaintiff contends that the trial court improperly invoked Supreme Court Rules 213(f) and (g) to bar occurrence witness Boris Sigal from offering testimony relevant to the issue of notice. Sigal, a customer who witnessed plaintiff being struck by the door, went to the store's customer service counter to get help. Sigal testified that after informing the employee behind the counter that he had just seen a woman get hit by the sliding door, the employee told him that such an event had occurred before. In a subsequent sidebar, the trial court ruled that the statement made by the Phar-Mor employee to Sigal was inadmissible pursuant to Supreme Court Rules 213(f) and (g) because plaintiff had not advised defendant prior to trial of such testimony by Sigal. See 177 Ill. 2d Rs. 213(f), (g). The court then instructed the jury that it was to disregard Sigal's testimony regarding the statement made to him by defendant's employee.

---

[2]As discussed earlier, we believe evidence regarding Kiedrowski finding the side panels open on previous occasions and closing them, evidence of the fact that no one from Phar-Mor alerted the maintenance and inspection company of the apparent recurring opening of the side panel, and evidence that the operation of the sliding doors was thus never tested with the side panels out, is relevant to plaintiff's negligence claim.

■ Rule 213(g) is concerned with opinion witnesses and states that parties must disclose the subject matter on which each opinion witness is expected to testify. 177 Ill. 2d R. 213(g). The committee comments to the rule note that in order to avoid surprise, opinion witnesses should be barred from giving previously undisclosed opinions unless the interests of justice require otherwise. 177 Ill. 2d R. 213(g), Committee Comments. Plaintiff maintains that Sigal was not an opinion witness and 213(g) is thus irrelevant. We agree. Moreover, as defendant notes in its brief, it is unclear from the record whether the court actually relied upon this particular portion of the rule. To the extent that it did, its ruling was in error.

■ Pursuant to Rule 213(f), parties must advise each other of the identity and location of witnesses who will testify at trial, together with the subject matter of their testimony. 177 Ill. 2d R. 213(f). We find that Rule 213(f) supports the trial court's decision barring Sigal's testimony. Plaintiff, in her amended Rules 213(f) and (g) interrogatories, stated that Sigal was "expected to testify consistent with his deposition testimony." Although Sigal's deposition is not part of the record on appeal, the record reveals that the parties and the court examined it at a sidebar and found that Sigal had not testified in his deposition about such a conversation with a Phar-Mor employee. The trial court struck Sigal's trial testimony on the basis that it was "a pretty substantial statement" that was not consistent with Sigal's deposition testimony and had not been disclosed to defendant before trial. The court was within its discretion in so ruling.

In sum, the trial court's denial of plaintiff's last-minute request to proceed on a theory of *res ipsa loquitur*, along with the various evidentiary rulings alleged by plaintiff to have been in error, did not, either singly or together, act to deprive plaintiff of a fair trial.

Accordingly, the directed verdict on the premises liability claim is affirmed. The trial court's directed verdict in favor of defendant on plaintiff's simple negligence claim is reversed and the case is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

CAHILL, P.J., and GORDON, J., concur.