Diane PARKER, Plaintiff-Appellant,

v.

FOUR SEASONS HOTELS, LIMITED,
Defendant-Appellee.

No. 16-1244

United States Court of Appeals,
Seventh Circuit.

Argued September 27, 2016

Decided January 6, 2017

Diane Parker, Venetia, PA, Pro Se.

David A. Izzo, Attorney, David A. Izzo & Associates, Chicago, IL, for Defendant–Appellee.

Before BAUER, ROVNER, and HAMILTON, Circuit Judges.

ROVNER, Circuit Judge.

Diane Parker was injured when a sliding glass door in the bathroom of her Four Seasons Hotel room shattered. The hotel admitted negligence and a jury awarded Parker $20,000 in compensatory damages, which was reduced to $12,000 after a motion for set-off was granted. The district court declined Parker's request to put the question of punitive damages to the jury, finding her evidence insufficient as a matter of law. We reverse and remand for further proceedings on the question of punitive damages.

I.

Four Seasons asserts that the federal courts lack jurisdiction over this diversity suit because the amount in controversy does not exceed $75,000, citing the ultimate award of $12,000. But the requirements for diversity jurisdiction (including the amount in controversy) must be satisfied only at the time the suit is filed. *Rosado v. Wyman*, 397 U.S. 397, 405 n.6, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (noting the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile or the amount recovered falls short of the statutory threshold); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). Four Seasons does not deny that, when Parker filed her complaint, she brought claims in apparent good faith for compensatory and punitive damages exceeding $150,000. *Dart Cherokee Basin Operating Co. v. Owens*, —— U.S. ——, 135 S.Ct. 547, 553, 190 L.Ed.2d 495 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (once the facts supporting the amount in controversy have been established, the proponent's estimate of the claim's value must be accepted unless there is legal certainty that the controversy's value is below the threshold). Parker's claimed damages are well in excess of the requisite amount, and federal jurisdiction is secure.

We turn to the facts, which we will simplify to focus on the issue at hand. Parker and her sister, Cindy Schiavon, checked into the Four Seasons on April 27, 2007, requesting adjoining rooms. After a short delay at the desk, Parker was assigned to room 3627 and her sister was given the room next door. In Parker's room, a sliding glass door separated the shower area from the vanity area.[1] On the day after check-in, Parker took a shower and attempted to exit the shower area by opening the glass door. As she slid the door, it exploded suddenly, raining shards of glass onto her naked body and causing her injuries. Parker's sister summoned help from the front desk. Shortly thereafter, Joseph Gartin, an engineer employed by the hotel, arrived to investigate the incident. According to Schiavon's affidavit, Gartin:

> immediately looked up at the overhead track and said: "Looks like the stopper moved again!" ... He explained that the hotel had recently undergone renovations, and that a "bunch" of the newly installed sliding glass doors had exploded because the overhead track stoppers were not working properly. That allowed the door-handles to crash into the walls and cause the glass doors to explode. This was one of the rooms on the "do not sell" list. You might want to check yours.

R. 101-7, at 2. Taking Gartin's advice, Schiavon checked the sliding door in her bathroom in the adjoining room and determined that it suffered from the same defect.

■ Parker also uncovered evidence suggesting that the sliding door in her room had shattered before the incident that caused her injury, and that the door had been replaced. An October 2007 email between third party contractors working on door breakage issues revealed that several rooms configured in the same manner as Parker's room had similar issues:

> Bob-
>
> Here is an update from Contract Mirror & Supply on the shower doors at the Four Seasons. CMS installed 150 tub doors, 136 shower doors, and 136 sliding barn doors during the renovation. We have had one shower door break (room 4401) and five sliding glass barn doors break (rooms 3427, 3527, 3627 twice, and 4419). The cause of the shower door breakage was identified and all of the shower doors were inspected to be sure that there were no additional problems. Since the X27 rooms represent 80% of the barn door failures these rooms were examined to identify what was different in these rooms that may have caused the problems. The thicker wall construction in this room leaves less clearance for the door (+/- ½" clearance versus +/- 1" in other rooms) and the tight tolerance may contribute to the breakage because the door may deflect up to ½" if someone pulls on the door while operating it which would allow the corner of the glass to hit the stone. CMS has been working with Jim DeFily to add corner protection to the glass to protect the corners in the event of impact and CMS is also researching a continuous bottom guide that was suggested by the hotel.

R. 101-2.[2]

The hotel conceded negligence and so the only issue for trial was damages. But

---

1. This door is referred to in the record as a "barn door." Apparently, it is separate from or in addition to a shower door.

2. Judge Leinenweber found this email admissible under the residual exception to the hearsay rule. *Parker v. Four Seasons Hotels, Ltd.*, 2014 WL 1292858, *3 (N.D. Ill. March 31, 2014). Although Four Seasons argues in its

Four Seasons moved to block Parker from raising the issue of punitive damages before the jury, contending that her evidence was insufficient as a matter of law to present that claim to the jury. The district court agreed, and after trial, Parker recovered $20,000 in compensatory damages which was reduced to $12,000 after set-off. Parker appeals.

## II.

■ Parker proceeded *pro se* through much of the litigation in the district court and also represented herself in this appeal. A trial court is obligated to liberally construe a *pro se* plaintiff's pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Kelley v. Zoeller*, 800 F.3d 318, 325 (7th Cir. 2015); *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014). On appeal, we too construe *pro se* filings liberally, and will address any cogent arguments we are able to discern in a *pro se* appellate brief. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). The Honorable Harry Leinenweber oversaw the case from filing in April 2012 until July 2014, when it was transferred to the newly forming docket of the recently appointed Honorable Manish S. Shah. Shortly before his transfer off the case, Judge Leinenweber ruled on the Four Seasons' motion for summary judgment. Faced with the plaintiff's rambling *pro se* complaint, a document that did not set forth any particular counts, Judge Leinenweber liberally construed the document and inferred six possible causes of action under Illinois law: premises liability, common law fraud, vio-

lation of the Illinois Safety Glazing Materials Act and the Chicago Municipal Code, negligence in the installation of the sliding glass doors, spoliation of the evidence, and intentional infliction of emotional distress. Judge Leinenweber granted summary judgment in favor of the defendants on all of these claims except premises liability.

■ Under Illinois law, property owners owe to their invitees a duty to maintain the premises in a reasonably safe condition. *Ward v. K Mart Corp.*, 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 227 (1990). *See also Marshall v. Burger King Corp.*, 222 Ill.2d 422, 305 Ill.Dec. 897, 856 N.E.2d 1048, 1058 (2006). In a premises liability action, a plaintiff has the burden of proving: (1) the existence of a condition that presents an unreasonable risk of harm to persons on the premises; (2) that the defendants knew, or should have known, that the condition posed an unreasonable risk of harm; (3) that the defendants should have anticipated that individuals on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it; (4) a negligent act or omission on the part of the defendant; (5) an injury suffered by the plaintiff; and (6) that the condition of the property was a proximate cause of the injury to the plaintiff. *Jordan v. National Steel Corp.*, 183 Ill.2d 448, 233 Ill.Dec. 818, 701 N.E.2d 1092, 1094 (1998); *Mueller v. Phar-Mor, Inc.*, 336 Ill.App.3d 659, 271 Ill.Dec. 8, 784 N.E.2d 226, 231 (2000). Judge Leinenweber concluded that Schiavon's affidavit and the contractor's email provided sufficient evidence to preclude summary judgment

response brief that the email is inadmissible, the hotel fails to acknowledge that the district court rejected this argument, and fails to make any argument that the district court abused its discretion in deeming the email admissible. *United States v. Ferrell*, 816 F.3d 433, 438 (7th Cir. 2015) (we review a district

court's decision on the admissibility of hearsay statements for abuse of discretion, reversing if the decision strikes us as fundamentally wrong). By failing to argue that the district court abused its discretion, Four Seasons has waived any claim regarding the admissibility of this evidence.

on a premises liability claim. The court did not specifically address whether Parker's premises liability claim was limited to compensatory damages for negligence or whether she could also seek punitive damages for wilful and wanton conduct.

After the case had been transferred to the docket of Judge Shah and shortly before trial, Four Seasons submitted a motion seeking to prohibit the plaintiff from presenting a claim for punitive damages to the jury. Although the hotel characterized its filing as a motion *in limine*, it was really a motion for partial summary judgment on the issue of punitive damages, and the district court appeared to treat it as such. Judge Shah considered whether Parker had presented sufficient evidence to meet the standard for punitive damages under Illinois law, specifically whether she had evidence of wilful and wanton conduct by the defendant. Judge Shah agreed with Judge Leinenweber that Parker had sufficient evidence to present to the jury a premises liability claim founded on negligence but concluded that the same evidence was insufficient as a matter of law to prove the wilful and wanton conduct that could justify punitive damages.

Parker's primary claim on appeal is that the district court erred when it concluded that her claim for punitive damages failed as a matter of law. Four Seasons contends that we should review the district court's decision for abuse of discretion because it involves the admission or exclusion of evidence, matters peculiarly within the competence of the district court. But the basis of the court's decision was whether a particular claim could be sustained as a matter of law, not whether evidence should be admitted or excluded.[3] We therefore review the district court's grant of partial summary judgment *de novo*, examining the record in the light most favorable to Parker and construing all reasonable inferences from the evidence in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Yahnke v. Kane County, Ill.*, 823 F.3d 1066, 1070 (7th Cir. 2016). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Yahnke*, 823 F.3d at 1070. The preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 359 (1978).

Under Illinois law, "punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay*, 23 Ill.Dec. 559, 384 N.E.2d at 359. *See also Stojkovich v. Monadnock Bldg.*, 281 Ill.App.3d 733, 217 Ill.Dec. 35, 666 N.E.2d 704, 712 (1996) (same). Although Parker contends that the hotel committed fraud when it failed to warn her at check-in time that her room contained a hazardous condition, like the district court we conclude that Parker has presented no evidence of fraud or intent to deliberately harm her.

---

**3.** In deciding the legal issue under review here, the district court also determined the admissibility of certain evidence, namely, the email regarding door problems. Admissibility is a threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). As we noted above, Four Seasons made no argument that the district court abused its discretion in finding the email admissible and thus only the summary judgment decision is at issue at this stage.

Instead, the question is whether the hotel's conduct was so grossly negligent "as to indicate a wanton disregard of the rights of others." *Kelsay*, 23 Ill.Dec. 559, 384 N.E.2d at 359. Punitive damages serve to punish the offender and to deter that party and others from engaging in similar acts of wrongdoing in the future. *Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 150 Ill.Dec. 510, 563 N.E.2d 397, 401 (Ill. 1990). "Because of their penal nature, punitive damages are not favored in the law." *Loitz*, 150 Ill.Dec. 510, 563 N.E.2d at 401.

Illinois courts distinguish negligence from wilful and wanton conduct. *Stojkovich*, 217 Ill.Dec. 35, 666 N.E.2d at 712; *Loitz*, 150 Ill.Dec. 510, 563 N.E.2d at 402. One court described wilful and wanton conduct as "a hybrid between acts considered to be negligent and intentional acts." *Stojkovich*, 217 Ill.Dec. 35, 666 N.E.2d at 712. Negligence that does not justify punitive damages includes "mere inadvertence, mistake, errors of judgment and the like." *Stojkovich*, 217 Ill.Dec. 35, 666 N.E.2d at 712; *Loitz*, 150 Ill.Dec. 510, 563 N.E.2d at 402. But punitive damages may be awarded in cases involving "reckless indifference to the rights of others," or conduct that approaches the degree of moral blame attached to intentional harm, where a defendant inflicts a highly unreasonable risk of harm on another in conscious disregard of that risk. *Loitz*, 150 Ill.Dec. 510, 563 N.E.2d at 402. In the context of premises liability, wilful and wanton conduct includes an act committed with reckless disregard for the safety of others, "such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Salazar v. Crown Enterprises, Inc.*, 328 Ill.App.3d 735, 262 Ill.Dec. 906, 767 N.E.2d 366, 371 (2002) (citing *American Nat. Bank & Trust Co. v. City of Chicago*, 192 Ill.2d 274, 248 Ill.Dec. 900, 735 N.E.2d 551, 557 (2000)).

The district court focused on *Stojkovich, Loitz* and *Salazar* in finding that Parker did not meet the Illinois standard for punitive damages. In *Loitz*, the plaintiff was injured when the barrel of his Remington shotgun exploded, injuring his hand. Remington had received reports of ninety-four shotgun barrel explosions resulting in injury for this particular model. But the company had investigated every reported incident and determined the cause in each instance to be shells that had been reused and overloaded by the user of the gun. The court concluded that Remington's conduct was not wilful and wanton in part because guns are inherently dangerous instrumentalities and so the mere occurrence of an explosion without more does not establish a level of misconduct sufficient to justify punitive damages. *Loitz*, 150 Ill.Dec. 510, 563 N.E.2d at 404. The court further found that punitive damages were not warranted because the plaintiff had cast no doubt on Remington's good faith in investigating prior explosions. *Loitz*, 150 Ill.Dec. 510, 563 N.E.2d at 407.

In *Stojkovich*, the plaintiff was injured while attempting to escape from an elevator that had stalled between the second and third floors of the historic Chicago building. The elevator had stalled on seventeen prior occasions and five of the stoppages had resulted in passengers being trapped. In each prior instance, the elevator was serviced and became operable again. The elevator was never taken out of service and the true problem was not diagnosed until after the plaintiff fell down the shaft while trying to leave the stalled elevator. There was no evidence that the company responsible for maintaining the elevator had ever failed to respond to service calls, failed to attempt to repair the pro-

blematic elevator when called upon to do so, or placed the elevator back in service knowing that it was defective and remained unrepaired. 217 Ill.Dec. 35, 666 N.E.2d at 712–13. Absent evidence that the company deliberately refused to attempt repairs, or placed it back in service knowing both the cause of the stoppages and that the cause had not been remedied, the court declined to find that the company's conduct approached the degree of moral blame necessary to justify punitive damages. 217 Ill.Dec. 35, 666 N.E.2d at 713.

*Salazar* addressed the duty of a landowner to a trespasser on the land. The trespasser, a homeless person, was beaten to death on the defendant's unsecured property. His survivors alleged that the property was in such a state of disrepair and abandonment that it posed structural, sanitary and social hazards that rendered it unreasonably dangerous even to trespassers. In Illinois, landowners owe trespassers a duty only to refrain from wilful and wanton conduct. The court declined to find that the landowner could be held responsible for the criminal acts of a third party against a trespasser where the plaintiff lacked evidence that the landowner engaged in any intentional act or knew of other injuries or accidents caused by the allegedly dangerous condition. Without that knowledge, the court concluded that allowing the property to fall into disrepair did not rise to the level of wilful and wanton conduct. 262 Ill.Dec. 906, 767 N.E.2d at 371.

With those standards in mind, we turn to Parker's evidence of wilful and wanton conduct here. The affidavit from Schiavon and the email from the contractor working on the door issues were Parker's best evidence that the hotel knew there was a serious problem with the sliding doors at the time the room was rented to Parker.

Parker had the admission of the hotel's engineer that the stopper had moved "again," that a "bunch" of the newly installed sliding glass doors had exploded because the overhead track stoppers were not working properly, that the doors were crashing into the walls and exploding, and that rooms affected by the problem had been placed on a "do not sell" list. *See Barton v. Chicago & N.W. Transp. Co.*, 325 Ill.App.3d 1005, 258 Ill.Dec. 844, 757 N.E.2d 533, 555 (2001) (evidence of substantially similar occurrences is admissible to show a conscious disregard for the safety of others). She also had the email suggesting that several doors had broken in a similar manner and that the glass door in her very room had previously exploded and been replaced.

Although competing inferences could be drawn from this evidence, on summary judgment we draw all reasonable inferences in favor of the party opposing judgment, in this instance, Parker. Construing this evidence in Parker's favor, it would be fair to infer that the Four Seasons knew that there was a problem with the glass doors generally, that the door in Parker's room had previously shattered, and that there was a problem with the stopper that allowed the door handle to come into contact with the wall, resulting in the shattering of the glass door. It would also be fair to infer that the hotel knew that the problem had not been fixed as of the time that Parker checked into the room, and that the room had been taken out of service for that very reason, and placed on a "do not sell" list. Yet the hotel rented the room to Parker anyway. Although Parker may not have presented evidence that the glass door explosions had previously resulted in injury, at this stage she need only show that injury was reasonably foreseeable. *See Barton*, 258 Ill.Dec. 844, 757 N.E.2d at 556–57 (noting that in assessing substantially similar occurrences, the relevant test

is not injuries actually suffered but injuries reasonably foreseeable from such incidents). Injury is more than reasonably foreseeable when a hotel installs in a shower area a glass door that is prone to exploding in regular use.

Parker asserts that her case is more like *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003), than it is like *Stojkovich, Salazar* or *Loitz*. In *Mathias*, a motel knowingly and repeatedly rented out hotel rooms that it knew were infested with bedbugs. Although the defendant claimed that it was guilty of nothing more than simple negligence, we explained that the hotel's conduct easily fit the definition of gross negligence and even recklessness because of the unjustifiable failure to avoid a known risk. As we noted, rooms "that the motel had placed on 'Do not rent, bugs in room' status nevertheless were rented." 347 F.3d at 675. The plaintiffs received a room the motel had classified as "DO NOT RENT UNTIL TREATED," even though the room had not been treated. Because the motel likely could not have rented any rooms at the prices charged if the guests had been informed that the risk of being bitten by bedbugs was appreciable, we concluded that the failure to either warn the guests or to take effective measures to control the bedbugs amounted to fraud and probably battery as well. 347 F.3d at 675. The conduct therefore met the standard for wilful and wanton conduct under Illinois law, allowing a claim for punitive damages to proceed.

Parker's case falls somewhere between *Mathias* on the one hand and *Stojkovich, Salazar* or *Loitz* on the other. In both *Stojkovich* and *Loitz*, the defendants investigated the problem and believed they had addressed any danger. In *Loitz*, a case involving a product the court characterized as inherently dangerous, Remington could not control user errors in overloading

shells and the company had investigated the problem in good faith, finding no flaws in the construction of the shotgun. *See also Barton*, 258 Ill.Dec. 844, 757 N.E.2d at 555–56 (distinguishing *Loitz* from a case involving a passenger injured when deboarding a commuter train because *Loitz* involved an inherently dangerous product or situation and deboarding a train stopped at a station is not inherently dangerous). In *Stojkovich*, the elevator repair company thought that it had fixed the problem each time the elevator had stalled, and no one placed the elevator back in service knowing or even suspecting that the true problem had not been fixed. In *Salazar*, the property owner could not foresee the criminal acts of a third party when such an act had never occurred on the property. But in Parker's case, a fact-finder could infer that the hotel, like the motel in *Mathias*, was aware that there was a problem that could cause injuries, that the problem had not yet been fixed, and that the room had been removed from service because of the problem. And yet, as previously noted, the hotel rented the room to Parker. A fact-finder could conclude that this was a "failure, after knowledge of impending danger, to exercise ordinary care to prevent it." *Salazar*, 262 Ill.Dec. 906, 767 N.E.2d at 371.

Four Seasons vigorously disagrees with Parker's characterization of the facts. The hotel has evidence that, if credited by the fact-finder, counters those inferences. Four Seasons may have thought it repaired the problem. Parker's room could have been pulled from service for some other reason, and Parker's sister may not be a credible witness when weighed against the building engineer, Gartin, who may have a different recollection. These are issues for a fact-finder to decide. *Barton*, 258 Ill.Dec. 844, 757 N.E.2d at 555 (whether punitive damages can be awarded for a particular cause of action is a

matter of law, but the question of whether a defendant's conduct was sufficiently wilful and wanton to justify imposing punitive damages is generally for the jury to decide). On summary judgment, we conclude that Parker has the right to present her punitive damages claim to the jury. We therefore remand the case for further proceedings on the question of punitive damages.

■■■■■ We must briefly address a few other issues. Parker contends that the district court abused its discretion when it allowed her attorney to withdraw prior to trial. We review for abuse of discretion a district court's decision to grant a motion to withdraw in a civil case. *Stafford v. Mesnik*, 63 F.3d 1445, 1448 (7th Cir. 1995). "The attorney seeking to withdraw must establish that his client consents or that a valid and compelling reason exists for the court to grant the motion over an objection." *Stafford*, 63 F.3d at 1448 (citing *Woodall v. Drake Hotel, Inc.*, 913 F.2d 447, 449 (7th Cir. 1990)). The court was well within its discretion to allow the attorney to withdraw where he had reached an impasse with Parker in how to proceed with the case. *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087–88 (7th Cir. 1982) (finding no abuse of discretion in allowing attorney to withdraw in civil matter where client refused to accept attorney's advice and attorney no longer felt able to adequately represent client's interests). Moreover, Parker suffered no prejudice from her attorney's withdrawal. After the court allowed Parker's lawyer to withdraw, more than eleven months passed before the trial began, allowing Parker ample time to either prepare for trial herself or to replace her lawyer. And as the trial and the appeal have demonstrated, Parker proved to be a very capable advocate.

That said, Parker, having raised one meritorious issue on appeal, also makes a number of poorly founded arguments in her brief. To the extent that we do not address a particular issue raised in the briefs, it is because we have concluded that the issue does not merit discussion.

REVERSED AND REMANDED.