2023 IL App (1st) 221522-U

No. 1-22-1522

Order filed October 20, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DOUGLAS L. WEDEKING, JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 4928 |
| | ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY, a | ) | Honorable |
| subsidiary of CANADIAN NATIONAL RAILWAY | ) | Bridget J. Hughes, |
| COMPANY, | ) | Judge presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in denying Wedeking's motion for a new trial where there were no trial errors, and therefore no cumulative error; the trial court abused its discretion in imposing sanctions on Wedeking and his attorney. Affirmed in part; reversed part.

¶ 2    Plaintiff, Douglas L. Wedeking, Jr., a former employee of defendant, Illinois Central

Railroad Company (ICRR), sued ICRR under the Federal Employers' Liability Act (FELA) (45

U.S.C. § 51 *et seq*.) alleging negligence. The jury found in favor of ICRR. Subsequently, ICRR sought sanctions related to Wedeking's disclosure of multiple witnesses who were not called to testify at trial, or who denied having the opinions Wedeking had disclosed. The trial court granted the motion for sanctions in part, ordering Wedeking to pay $15,289.90. Wedeking appeals both the judgment and the sanctions award. For the following reasons, we affirm in part, and reverse in part.

¶ 3                                I. BACKGROUND

¶ 4     Wedeking filed a complaint against ICRR alleging that on July 5, 2017, he was working for ICRR in Homewood and "while operating a cribber machine with a defective and malfunctioning air conditioning unit" suffered a heatstroke and was "severely and permanently injured, in whole or in part, due to the carelessness and negligence" of ICRR.

¶ 5                           A. Pre-Trial Sanctions Motions

¶ 6     Prior to trial, ICRR filed a motion for Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) sanctions against Wedeking, arguing that Wedeking's counsel fabricated seven Illinois Supreme Court Rule 213(f)(2) (eff. Jan. 1, 2018) disclosures. ICRR claimed it was forced to expend significant amounts of time and expense to take the depositions of each of the witnesses, and that it found that the witnesses "did not have the opinions attributed to them in [Wedeking]'s Rule 213(f)(2) disclosures." ICRR further claimed that "many of [the] witnesses admitted they had never been contacted by [Wedeking]'s counsel to discuss whether they even held the opinions attributed to them."

¶ 7     Wedeking responded that when disclosing witnesses, an answer is sufficient if it "gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." Wedeking claimed that the disclosures were

well-grounded in fact and warranted by existing law. He argued that he obtained the relevant medical records, reviewed them, and made his disclosures based on those records.

¶ 8    Both parties acknowledge in their briefs that the trial court denied ICRR's motion for sanctions.[1]

¶ 9    On November 10, 2021, ICRR filed a renewed motion for Rule 137 and Rule 219(c) sanctions, claiming it had incurred additional fees and costs to complete the depositions of the remaining Rule 213(f)(2) witnesses, and that those witnesses did not hold many of the opinions attributed to them in Wedeking's Rule 213(f)(2) disclosures.

¶ 10    Wedeking responded that he "took the road of full disclosure to make sure that [ICRR] was properly informed of all the opinion testimony which might be presented at trial." Wedeking argued that his disclosures were well-grounded in fact and warranted by existing law.

¶ 11    The trial court denied ICRR's renewed motion for sanctions.

¶ 12                                    B. Motions *in Limine*

¶ 13    Both parties filed several motions *in limine* prior to trial. Wedeking filed a motion *in limine* seeking to bar evidence or argument that he had abused drugs or prescription drugs. He claimed that he did not use drugs in any manner aside from as prescribed prior to or on July 5, 2017, and that there was no evidence of any alleged opioid or illegal drug use prior to or on July 5, 2017. Wedeking's counsel admitted that Wedeking was taking prescribed medications at the time of the incident and did not challenge evidence of opioid use or abuse after the incident.

¶ 14    The trial court barred lay testimony speculating about whether Wedeking was using drugs. The court also barred an admission ICRR sought to use – Wedeking telling a coworker in 2015

---

[1] We cannot find this order in the record. The page number Wedeking cites to in the record is incorrect, and ICRR does not cite to a page in the record.

that he had failed a drug test. The court concluded that because Wedeking was taking Norco at the time of the incident in 2017, evidence of Norco use, and expert testimony related to opioid abuse disorder, were relevant and admissible.

¶ 15    ICRR filed a motion *in limine* to bar Wedeking's former coworker, Earnest Lockett, from offering testimony claiming that the railroad supervisors destroyed or altered maintenance logbooks, that ICRR encouraged production over safety, and that workers, including Lockett, were discouraged from documenting incidents. The trial court concluded that Lockett could not testify to other allegedly altered logbooks or incidents. Lockett would be allowed to testify about facts he had knowledge of, including his personal knowledge of the cribber at issue around the time of the incident.

¶ 16    ICRR filed a motion *in limine* to bar Lawrence Mann, a regulatory expert Wedeking had disclosed, from testifying at trial because he had no personal knowledge of whether the cribber's air conditioning unit was working on the date in question. Wedeking argued that Mann would testify about Section 214.505 of the Code of Federal Regulations (FRA) (49 C.F.R. § 214.505), which mandates that equipment such as the cribber in question have an operating air conditioner.

¶ 17    The trial court granted ICRR's motion and barred Mann's testimony, finding that the regulation was not confusing, and that Mann could not testify as to whether the air conditioner was working on the date in question because he had no personal knowledge of that issue.

¶ 18                                    C. Trial

¶ 19    At trial, the jury heard videotaped testimony from the following witnesses: Amanda Seilliez, a physician's assistant; Amy Stevens, a physician's assistant; Radhika Rao, M.D., a psychiatrist who treated Wedeking in 2019; Melissa Karaffa, a mental health nurse practitioner; Emily Hanson, D.O., a family practitioner who last treated Wedeking in 2017; Albery Andrews, a

licensed clinical professional counselor who began treating Wedeking in 2020; and Laura Jansen, a licensed clinical professional counselor who treated Wedeking from May 2018 until October 2018. Karen Tabak, an economist, testified for Wedeking via video evidence deposition.

¶ 20    ICRR presented the video evidence depositions of Wedeking's supervisor, John Trexler, and ICRR's expert psychiatrist, William Giakas, M.D.

¶ 21    The jury heard live testimony from: Wedeking; Wedeking's wife; Wedeking's mother; Earnest Lockett, a coworker; Rodney Johnes, a coworker; Carl Sims, a coworker; Aaron Johnson, Wedeking's supervisor; Josh Cunningham, Wedeking's work equipment repairman; Will Johnson, a coworker; Jesse Brewer, assistant foreman; and ICRR's expert internist, Steven DeAngeles, M.D.

¶ 22    Wedeking testified that he reported for work on July 5, 2017, at around 7 a.m. He attended the morning briefing and completed his inspection of the cribber, including the air conditioning and the radio. He testified that the air conditioning was not working, so he asked for a mechanic over the radio. Cunningham came to the cribber but did not fix the air conditioning unit. Wedeking testified that he made about five more calls regarding the air conditioning unit, but Trexler and Brewer both told him to keep working. Wedeking stated that he vomited twice during the day and passed out at the end of the shift. Wedeking continued to feel unwell at the end of the day and decided to drive home, to Pickneyville, at around 2 a.m.

¶ 23    Wedeking testified that he returned to work on July 11, 2017, and worked at the site until July 26, 2017. Wedeking did not consult a healthcare professional until August 9, 2017.

¶ 24    Wedeking stated that although he normally documented defects in his machine, he did not document that the air conditioning was not working on July 5, 2017. He did not complete an accident, incident, or injury report on the date in question. Wedeking acknowledged that he had

been taking Norco regularly for years before the alleged incident, and that at some point he became addicted to opioids.

¶ 25    Lockett testified that he remembered hearing Wedeking call on the radio that he was having issues with his machine's air conditioner on July 5, 2017. He saw Wedeking several times during the shift and thought Wedeking looked tired, lethargic, and disoriented.

¶ 26    On cross-examination, Lockett acknowledged that in his deposition he had said that he did not have a radio with him on the date in question and was not able to overhear or monitor any of the radio communication that took place that day. He also stated in his deposition that he did not notice anything unusual about Wedeking on the date in question and did not have any words with him.

¶ 27    Rodney Jones, Wedeking's coworker, could not remember the date of the last time he worked with Wedeking. After looking at the transcript of his deposition, Jones' memory was not refreshed as to the date he worked with Wedeking.

¶ 28    Carl Sims, Wedeking's coworker, then testified that he heard Wedeking call twice for a mechanic to come look at his machine. Sims stated that he saw Wedeking after his shift and he looked pale, sick, and had slurred speech. On cross-examination, Sims acknowledged that he did not know if the incident occurred on July 5, 2017, and did not have any personal knowledge as to whether the air conditioner was working in Wedeking's machine on the date in question.

¶ 29    John Trexler, the production supervisor on the date in question, testified that equipment logbooks are kept on each piece of equipment. It is an electronic system whereby if there is repair work done, a mechanic can charge out his time to a particular machine and enter what kind of work he performed on that machine.

¶ 30 Trexler did not recall hearing Wedeking complain over the radio about his air conditioning, and Wedeking never reported becoming sick because of excessive heat while working on July 5, 2017.

¶ 31 Aaron Johnson, a work equipment supervisor, testified that for the months of June, July, and August, in 2017, there were no electronic work orders listed in the system for maintenance on the air conditioning unit of the cribber Wedeking was working in on July 5, 2017. Johnson stated that no required repair work for that specific cribber was noted on the machine's maintenance log for July 2017.

¶ 32 Will Johnson, Wedeking's coworker, testified that on July 3, 2017, he operated the cribber machine that Wedeking used on July 5, 2017, and the air conditioning worked properly. Johnson used the same machine again on July 6, 2017, and the air conditioning was working properly.

¶ 33 Brewer, Wedeking's foreman, testified that Wedeking did not report experiencing any injury or illness during July 2017, and he did not recall hearing any radio communications about Wedeking's air conditioning unit.

¶ 34 Brewer stated that on Wedeking's last day working for ICRR, in late July of 2017, Wedeking was crawling in and out of his machine while it was still working, and Wedeking was "acting frantic, crawling around the machine while the machine was going down the tracks, just not acting like himself." Brewer stated that he warned Wedeking that his behavior was unsafe, and Wedeking agreed not to do it again. But when Brewer checked on him later in the afternoon, Wedeking was engaged in the same conduct. After the shift, Brewer told Wedeking that he was "acting out of character and being extremely unsafe. And until I thought he was back to normal or acting normal, he needed to not run a machine. He needed to work on the ground." Brewer never heard from Wedeking again.

¶ 35    Sailliez, Wedeking's treating physician's assistant, testified that she had been prescribing Norco to Wedeking for several years before July 5, 2017. On August 9, 2017, Wedeking complained of fatigue, headaches, muscle aches, nausea, shortness of breath, and vomiting. He told her that an incident happened at work where he passed out in a hot machine for "a couple of hours." Based on Wedeking's description, Sailliez diagnosed him with heatstroke. She acknowledged that all of those symptoms were also symptoms of opioid withdrawal and admitted that she had never diagnosed anyone with heatstroke before. She also stated that she was required to put a diagnosis down for each appointment.

¶ 36    Sailliez testified that she ordered laboratory testing to evaluate Wedeking for any organ damage caused by the heatstroke. The lab results were all normal. Dr. Hanson, the primary physician overseeing Sailliez, testified that typically patients with heatstroke make a full recovery. Dr. Hanson also testified that fatigue, headache, body aches, nausea, and mental status changes can all occur in patients who abruptly stop taking opioids.

¶ 37    Dr. Rao testified that, based on the history Wedeking provided and the symptoms he described, Wedeking had posttraumatic stress syndrome (PTSD) related to the work incident. Dr. Rao admitted that she did not consider whether Wedeking's symptoms were related to substance abuse because he denied having any problems with drugs.

¶ 38    Karaffa testified that Wedeking's use of opioids was significant, his behaviors were consistent with someone suffering from opioid use disorder, and that opioid use disorder could have caused his severe depression.

¶ 39    ICRR's witness, Dr. Giakas, testified that Wedeking did not have a neuropsychiatric disorder, he was capable of returning to work, he would benefit from an adjustment to his

medications, and that the alleged heatstroke on July 5, 2017, did not cause him any injury or illness, including PTSD.

¶ 40    Dr. DeAngeles testified that there was no medical evidence to support Wedeking's claim of suffering a heatstroke. Dr. DeAngeles stated that a heatstroke is a medical emergency and that Wedeking would not have been able to drive six hours back home after suffering from heatstroke. Dr. DeAngeles testified that Wedeking showed no signs of organ-related issues that would present if a patient had suffered heatstroke, and that all lab results and imaging studies were normal.

¶ 41                                    D. Jury Instructions

¶ 42    Wedeking proposed the following jury instructions:

"1. The plaintiff claims that he was injured and sustained damages while he was engaged in the course of his employment with the railroad.

2. The plaintiff further claims that the railroad violated the Federal Employers' Liability Act in that:

An officer, agent or other employee of the railroad was negligent in that:

a. Failed to warn Plaintiff of reasonably foreseeable hazardous conditions existing with Defendant's equipment; and/or

b. Allowed unsafe practices to become the standard practice; and/or

c. In assigning Plaintiff work which Defendant knew or, in the exercise of reasonable care, should have known would result in injury to Plaintiff; and/or

d. Failed to provide a reasonably safe place to work; and/or

e. Failed to provide reasonably safe methods of work; and/or

f. Failed to provide Plaintiff with a safe [c]ribber machine; and/or

g. Failed to provide Plaintiff with a properly working air conditioning unit

in Plaintiff's kribber machine in violation of 49 C.F.R. § 214.505."

¶ 43    ICRR submitted proposed jury instructions stating that ICRR:

"a. Failed to provide a reasonably safe cribber machine; or

b. Failed to provide plaintiff with a properly working air conditioning unit in

plaintiff's cribber machine in violation of 49 C.F.R. § 214.505."

¶ 44    In considering the instructions, the trial court noted that the case fundamentally concerned

whether the air conditioning unit was working on the date in question. There was no evidence of

any failure to warn of a hazardous condition with the equipment, and there was no evidence that

ICRR allowed unsafe practices to become the standard practice. The court agreed to include a

special interrogatory on the verdict form, asking whether ICRR complied with 49 C.F.R. §

214.505.

¶ 45                              E. Verdict and Post-Trial Motions

¶ 46    The jury returned a verdict for ICRR. The jury answered "yes," to the question regarding

whether ICRR complied with 49 C.F.R. § 214.505. Following the verdict, ICRR filed a motion for

Rule 137 and Rule 219(c) sanctions, arguing that Wedeking failed to call 10 witnesses that he had

disclosed as Rule 213(f)(2) witnesses and that he fabricated 8 Rule 213(f)(2) witness disclosures.

ICRR claimed that it was forced to take depositions of these witnesses, needlessly increasing the

cost of litigation. ICRR contended that Wedeking purposely did this in the hopes that ICRR would

settle the case, and that ICRR incurred significant costs in the process.

¶ 47    The trial court ruled as follows:

"For the reasons set forth in [ICRR]'s motion, and for the reasons stated in open

court, Defendant's Rule 137 and Rule 219(c) Motion for Sanctions is granted in

part and denied in part. [Wedeking] and/or his attorneys, Benajmin P. Tobin of Prat & Tobin, P.C. are ordered to pay to [ICRR] sanctions for the Rule 213(f)(2) witnesses [Wedeking] did not call to testify at trial in the amount of $15,289.90[.]"

¶ 48    ICRR's requests for sanctions to prepare for and take the depositions of three other witnesses were denied. ICRR's requests for sanctions relating to preparing its motion for sanctions, renewed motion for sanctions, and posttrial motion for sanctions, were all denied.

¶ 49                                    II. ANALYSIS

¶ 50    On appeal, Wedeking argues that: (1) the trial court improperly denied his motion for a new trial where there were several trial errors and the cumulative effect of the trial errors deprived him of a fair trial, and (2) the trial court abused its discretion in imposing sanctions.

¶ 51                                    A. Trial Errors

¶ 52    Wedeking contends that the following trial errors occurred: (1) the denial of Wedeking's motion *in limine* to prohibit evidence of prior opioid abuse; (2) the barring of Lawrence Mann's testimony; (3) the disparate treatment of Wedeking's witness, Earnest Lockett; (4) judicial bias against Wedeking and Wedeking's counsel; (5) limiting the testimony of Aaron Johnson and Rodney Jones; (6) the improper narrowing of jury instructions; (7) the verdict was against the manifest weight of the evidence; and (8) the cumulative effect of the aforementioned errors.

¶ 53            1. Motion *in Limine* to Prohibit Evidence of Prior Opioid Abuse

¶ 54    The first alleged error Wedeking complains of is that the trial court abused its discretion when it denied the portion of Wedeking's motion *in limine* to prohibit the introduction of evidence of prior opioid abuse. ICRR responds that the trial court correctly allowed evidence of Wedeking's history of opioid use because it was relevant to Wedeking's claims that he suffered a heatstroke on the date in question, and relevant to his physical and mental health issues.

11

¶ 55    Evidence that is not relevant is not admissible. *Clemons v. Mechanical Devices Co.*, 292 Ill. App. 3d 242, 251 (1997). Relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Fronabarger v. Burns*, 385 Ill. App. 3d 560, 564 (2008). Relevant evidence may still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 56    The admission of evidence is within the sound discretion of the trial court, and we will not reverse the court's ruling unless that discretion was clearly abused. *Gill v. Foster*, 157 Ill. 2d 304, 312-13 (1993). A trial court is vested with broad discretion to grant or deny a motion *in limine* as part of its inherent power to admit or exclude evidence. *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 3. The trial court abuses its discretion when its decision is arbitrary, fanciful, unreasonable, or where no reasonable person would take the adopted view. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 57    Here, Wedeking's motion *in limine* sought to bar the following evidence:

"Suggestion, reference, or argument that [Wedeking] had abused drugs or prescription drugs, or other reference or suggestions to [Wedeking] using 'drugs' 'illegal drugs' before and on July 5, 2017, or having a substance abuse problem, being admitted for opioid abuse, or any other substance prior to and on July 5, 2017."

¶ 58    During the hearing on motions *in limine*, the trial court noted that it was not going to make "a hard stop" on July 5, 2017, because he was being prescribed Norco at the time of the incident.

The trial court stated that the parties would not be able to introduce evidence of opioid use "from 2015" or "2013" but that evidence of use on July 5, 2017, and immediately prior, would be admissible.

¶ 59    At trial, Wedeking testified that he had taken Norco for years before July 5, 2017. Sailliez, a physician's assistant, testified that she had prescribed Norco for Wedeking years before the incident because of his kidney stones. She testified that nothing had ever come up during the random drug screenings indicating that he was abusing Norco. She acknowledged on cross-examination that the symptoms he reported having on July 5, 2017, were consistent with opioid withdrawal. Dr. Hanson testified that opioid withdrawal was only one "theoretical cause of the symptoms" Wedeking reported having on the date in question, and that there was no way to tell the amount of medication in his symptom on that date or on August 9, 2017, because there was no "tox screen" ordered.

¶ 60    Wedeking argues that the trial court's denial of his motion *in limine* to prohibit evidence of his opioid use before and on July 5, 2017, was an abuse of discretion because it allowed defense counsel to ask about his opioid use and make inferences that Wedeking's "symptoms were solely the result of opioids," which was "unfairly prejudicial and substantially outweighed the probative value of allowing such questioning."

¶ 61    However, a plaintiff in a FELA action must establish that a defendant's negligent conduct was a cause in fact of his injuries. See *Wardell v. Union Pacific Railroad Co.*, 201 IL 120438, ¶ 14. Wedeking's opioid use on the date in question, and leading up to it, is certainly relevant to what caused the symptoms he allegedly experienced on the date in question. *Fronabarger*, 385 Ill. App. 3d at 564 (relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would

13

be without the evidence). Moreover, prejudice means "an undue tendency to suggest a decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror." M. Graham, *Cleary & Graham's Handbook of Illinois Evidence* § 403.1 (4th ed. 1984); *People v. Prather*, 2012 IL App 2d 111104, ¶ 24. In this case, there is nothing in the record that supports a finding that evidence of Wedeking's Norco usage on the date in question would have induced the jury to decide the case based upon hatred, contempt, or horror. To the contrary, the evidence showed that he had been prescribed Norco for many years prior to the date in question, and that random screenings prior to the incident had never shown an abuse of opioids. The fact remains that Wedeking's use of Norco on the date in question, and immediately prior, is relevant to the state of his health, and to the cause of his alleged symptoms and behavior, on that date. See *Arient v. Alhaj-Hussein*, 2017 IL App (1st) 162369, ¶ 39 (finding nothing in the record to support finding that evidence of plaintiff's smoking would have induced jury to decide case based upon hatred, contempt, or horror).

¶ 62    Accordingly, we cannot say that no reasonable person would adopt the same view as the trial court (*Seymour*, 2015 IL 118432, ¶ 41), and it did not abuse its discretion in denying the portion of Wedeking's motion *in limine* requesting that ICRR be prohibited from discussing his opioid use on or before July 5, 2017.

¶ 63                              2. Lawrence Mann's Testimony

¶ 64    Next, Wedeking contends that the trial court abused its discretion in granting ICRR's motion *in limine* to bar Mann's expert testimony. The decision of whether to admit expert testimony is within the sound discretion of the trial court, and the trial court's ruling will not be reversed absent an abuse of that discretion. *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003). Expert testimony is admissible if the proffered expert is qualified by knowledge, skill, experience,

training, or education, and the testimony will assist the trier of fact in understanding the evidence or determining a fact at issue. *Grant v. Petroff*, 291 Ill. App. 3d 795, 801 (1997). When determining whether proffered expert testimony assists the trier of fact, it is well settled that " 'expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible.' " *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 800 (2009) (quoting *Good Shephard Manor Foundation, Inc. v. City of Momence*, 323 F. 3d 557, 564 (7th Cir. 2003)).

¶ 65    Wedeking contends that Mann should have been allowed to testify because the regulation at issue, section 214.505, "cannot be properly understood by a lay juror." Wedeking further contends that Mann would have testified consistently with his evidence deposition that for many years "railroad workers have complained about the problem of the lack of air conditioning in equipment operated by the workers," that ICRR was aware of the problem, and that ICRR failed to provide a safe place to work by: requiring Wedeking to work while in an overheated machine; failing to train Wedeking in safety measures; having a policy of threatening employees with discipline if they marked off duty for being overheated; and failing to provide reasonably safe work conditions which contributed to the cause of the incident involving Wedeking.

¶ 66    First, Mann admitted in his deposition that he did not examine the machine at issue, and therefore could not offer expert testimony on it. The trial court correctly noted that Mann never examined the machine, so it was up to the jury to make the determination of whether there was a working air conditioner in the machine. Accordingly, the trial court did not abuse its discretion when it granted the motion *in limine* barring Mann's testimony on the specific factual matter of whether the air conditioning in the cribber was working on July 5, 2017.

¶ 67    Second, the trial court did not abuse its discretion in barring Mann's testimony regarding section 214.505 of FRA, which states that a cribber like the one Wedeking was working in "shall

be equipped with *** operative air conditioning systems." 49 C.F.R. § 214.505. Wedeking contends that Mann would have testified that the machine Wedeking was operating on the date in question was governed by section 214.505. However, ICRR stipulated that section 214.505 applies to the machine in question. Accordingly, Mann's testimony was not needed on that issue. *Grant,* 291 Ill. App. 3d at 801 (expert testimony is admissible if the testimony will assist the trier of fact in understanding the evidence or determining a fact at issue).

¶ 68 Finally, to the extent that Wedeking relies on *Illinois Central R.R. Co. v. Brent*, 133 So. 3d 760 (2013), a Mississippi case, to support his proposition that Mann should have been allowed to testify, we decline to follow it. Clearly, cases from foreign jurisdictions are not precedential or binding on this court. *Kostal v. Pinkus Dermatology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005). "When there is Illinois case law directly on point, we need not look to case law from other states for guidance," when we have our own precedent to follow. *Id.*

¶ 69 Accordingly, we find that the trial court did not abuse its discretion in barring Mann's proffered expert testimony.

¶ 70                           3. Earnest Lockett's Testimony

¶ 71 Wedeking's next argument on appeal is that the trial court improperly limited Lockett's trial testimony to information about July 5, 2017. Wedeking contends that Lockett, a former ICRR employee, should have been allowed to testify about his past experiences in working for ICRR, and specifically his experiences related to logbooks, accident reports, and reporting injuries to Jesse Brewer and Aaron Johnson. ICRR responds that Lockett's purported testimony about logbooks, accident reports, and reporting injuries, was not relevant to the question of whether the air conditioner in Wedeking's cribber was functioning on the date in question.

¶ 72     We reiterate that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. Evid. R. 401 (eff. Jan. 1, 2011). Here, Lockett's testimony about past practices of logbooks or documentation relating to equipment would not make any fact of consequence to the determination of whether the air conditioner in Wedeking's machine was working on the date in question more probable or less probable. Wedeking himself testified to the lack of documentation on the date in question, and Lockett admitted that he had no knowledge pertaining to the documentation on the date in question. Accordingly, we cannot find that the trial court's decision to bar Lockett's testimony regarding past experiences with logbooks and documentation was arbitrary, fanciful, unreasonable. *Seymour*, 2015 IL 118432, ¶ 41.

¶ 73     To the extent that Wedeking contends that other witnesses were allowed to testify to similar subject matter that Lockett was barred from testifying to, we note that his argument is completely devoid of any citations to authority. Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), provides that an appellant's brief must contain his contentions and the reasons therefor, accompanied by citation of authorities and pages of the record. Mere contentions, without argument or citation of authority, do not merit consideration on appeal. See *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991). Allegations of trial court error summarily raised without supporting authority are deficient and warrant a finding of forfeiture. *People v. Lantz*, 186 Ill. 2d 243, 261 (1999). Contentions that are supported by some argument, yet lack citations of authority, do not meet the requirements of Rule 341(h)(7). *Hood*, 210 Ill. App. 3d at 746. Wedeking's argument on this issue consists of several paragraphs detailing how unfairly he had been treated by Lockett's inability to testify as to similar subject matter that other witnesses were allowed to testify to, without any citations to authority. Accordingly, this argument is forfeited.

¶ 74                    4. Judicial Bias Against Wedeking and Counsel

¶ 75    Wedeking's next argument is that he was deprived of a fair trial due to judicial bias and advocacy against Wedeking and his counsel. Specifically, he states that the trial court: sustained objections by defense counsel even though defense counsel did not state what counsel was objecting to; specifically instructed Wedeking's counsel not to speak when they were off the record; interrupted Wedeking's counsel during jury selection to rehabilitate potential jurors which forced Wedeking's counsel to have to use preemptory strikes; did not allow qualified witnesses to testify about Wedeking's dementia; and did not allow basic questions about the makeup of the machine Wedeking was using on the date in question.

¶ 76    A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). "A judge's rulings alone almost never constitute a valid basis for a claim of judicial bias or partiality." *Id*. (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Allegedly erroneous findings and rulings by the trial court are insufficient reasons to believe the court has a personal bias against a plaintiff. *Eychaner*, 202 Ill. 2d at 280. The party making the charge of judicial bias must "present evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id*.

¶ 77    The United States Supreme Court has explained:

  "[O]pinions formed by the judge on the basis of facts introduced or events occurring

  in the course of the current proceedings, or of prior proceedings, do not constitute

  a basis for a bias or partiality motion unless they display a deep-seated favoritism

  or antagonism that would make fair judgment impossible. Thus, judicial remarks

  during the course of a trial that are critical or disapproving of, or even hostile to,

  counsel, the parties, or their cases, ordinarily do not support a bias or partiality

challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (Emphasis in original). *Liteky,* 510 U.S. at 55. Accord *Eychaner*, 202 Ill. 2d at 280.

¶ 78 The circumstances to which Wedeking refers as evidence of judicial bias – sustaining defense counsel's objections, instructing Wedeking's counsel off the record not to speak, interrupting counsel during jury selection, prohibiting witness testimony about Wedeking's dementia, and not allowing certain questions about the cribber at issue – do not display such deep-seated antagonism that would make fair judgment impossible. Furthermore, Wedeking does not offer any evidence proving that judicial bias stemmed from an outside source. Rather, the trial court based its opinions on specific facts of the current proceeding. See *Calabrese v. Benitez*, 2015 IL App (3d) 130827, ¶ 26 (trial court's comments amount to nothing more than the court attempting to educate an attorney on the realities of trial practice). Accordingly, we find that Wedeking has not met his burden of demonstrating judicial bias.

¶ 79 5. Limiting Testimony of Aaron Johnson and Rodney Jones

¶ 80 Wedeking contends that the trial court erred when it limited certain testimony from Aaron Johnson and Rodney Jones. Wedeking argues that his counsel should not have been barred from questioning Johnson about 49 CFR § 214.505(e), which states:

"(e)If the ventilation system on a new on-track roadway maintenance machine or a designated existing on-track roadway maintenance machine of the type identified in paragraphs (a)(1) through (a)(5) of this section, or functionally equivalent thereto, becomes incapable of protecting an employee in the cab of the machine from exposure to air contaminants in accordance with 29 CFR 1910.1000, personal

19

respiratory protective equipment shall be provided for each such employee until the machine is repaired in accordance with § 214.531."

¶ 81     Wedeking states that based on this section, "there is no doubt [ICRR] should have provided [Wedeking] with personal respiratory protective equipment if in fact the air conditioner was not working on July 15, 2017." However, as ICRR points out, this section of the statute concerns the ventilation system, not the air conditioning system, and mandates personal respiratory protective equipment be provided if the machine became incapable of protecting an employee from exposure to air contaminants. No such allegation has been made in this case regarding exposure to air contaminants or a malfunctioning ventilation system. Accordingly, we find that the trial court did not abuse its discretion in barring Johnson from testifying about 49 CFR § 214.505(e).

¶ 82     Wedeking also contends that the trial court abused its discretion when it stopped the testimony of Jones. During examination of Jones, Wedeking's counsel asked about the events that transpired on July 5, 2017. Jones responded that he did not remember that date. He was then shown the transcript of his deposition, which he read to himself. After reading the transcript, counsel asked if his recollection was refreshed, to which Jones replied, "No."

¶ 83     To introduce a conversation into evidence, it requires a proper foundation, which requires a demonstration of: (1) where and when the conversation occurred; (2) who was present during the conversation; and (3) who was speaking. *People v. Harris*, 333 Ill. App. 3d 741, 748-50 (2002). We find that because Jones could not remember the date of the alleged incident, which was the purported purpose for calling him, it was well within the discretion of the court to find that a foundation could not be laid for Jones' purported testimony. See *People v. Taylor*, 2011 IL 110067, ¶ 27 (a reviewing court applies the abuse of discretion standard to a trial court's determination as to whether an adequate foundation has been laid for evidence).

20

¶ 84                          6. Improper Narrowing of Jury Instructions

¶ 85     Wedeking contends that the trial court abused its discretion when it prevented him from including all his allegations of negligence in the jury instructions, including: failure to warn Wedeking of reasonably foreseeable hazardous conditions; allowing unsafe practices to become the standard practice; assigning Wedeking work that ICRR knew would result in injury; failure to provide reasonably safe methods of work; failure to provide Wedeking with a safe cribber machine; and failure to provide Wedeking with a properly working air conditioning unit.

¶ 86     The trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion. *Schultz v. Northeast Illinois Regional Commuter RR Corp.*, 201 Ill. 2d 260, 273 (2002). The standard for deciding whether a trial court abused its discretion is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles. *Id.* at 273-74. "The trial court has discretion in determining what issues are raised by the evidence." *Gretencord-Szobar v. Kokoszka*, 2021 IL App (3d) 200015, ¶ 40.

¶ 87     Here, Wedeking takes no issue with the instructions that were given, but rather argues that the trial court should have given additional instructions to include *all* of the allegations contained in Wedeking's second amended complaint. However, there is no requirement that a plaintiff is entitled to jury instructions on all allegations raised in a complaint. Rather, the jury is to be instructed on the issues that are raised by the evidence. See *Gretencord*, 2021 IL App (3d) 200015, ¶ 40. Here, the jury instructions provided in pertinent part that ICRR failed to provide Wedeking with a cribber equipped with an operative air conditioning system on July 5, 2017, in violation of 49 CFR 214.505, and that ICRR failed to provide a reasonably safe place to work and/or failed to provide plaintiff with a properly working air conditioning unit. These instructions reflect the issues

that were raised by the evidence, and they fairly, fully, and comprehensively apprised the jury of the relevant legal principles.

¶ 88    In rejecting additional instructions, the trial court noted that the case was not about whether there was a foreseeable hazardous condition that ICRR failed to warn Wedeking about, but rather "[i]t's a factual issue regarding whether the air conditioning was working or it wasn't working." In terms of the proposed instruction regarding allowing unsafe practices to become the standard practices, the trial court stated, "this is a one-day incident, a one-afternoon incident in which he stayed inside his machine." We agree and find that the trial court did not abuse its discretion in rejecting additional jury instructions. *Schultz*, 201 Ill. 2d at 273-74.

¶ 89    To the extent that Wedeking contends that the instructions were confusing in their discussion of ICRR's obligation to provide a reasonably safe place to work and matters of contributory negligence, we find that these arguments are forfeited. "A party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely objection to the instruction and tenders an alternative, remedial instruction to the trial court." *Mikolajczyk v. Ford Motor Co*., 231 Ill. 2d 516, 557 (2008). Here, there was no timely objection to the complained-of instructions.

¶ 90                    7. Verdict Against Manifest Weight of Evidence

¶ 91    Wedeking's only argument in this section of his brief states, "Here, the verdict was clearly against the weight of the evidence." He then cites several hundred pages of the record. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) states that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor." "A reviewing court is not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate." *U.S. Bank v. Lindsay*, 397 Ill.

App. 3d 437, 458 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). An issue not clearly defined and sufficiently presented fails to satisfy the requirements of Rule 341(h)(7) and is, therefore, forfeited. *In re Estate of Doyle*, 362 Ill. App. 3d 293, 301 (2005). Where, as here, the issue is merely listed or included in a vague allegation of error, it is not "argued" and will not satisfy the rule. *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010). There are no reasons given for Wedeking's contention that the verdict was clearly against the weight of the evidence, and therefore this issue is forfeited.

¶ 92                              8. Claim of Cumulative Error

¶ 93    Wedeking claims that the cumulative effect of the trial court's rulings denied him a fair trial. As previously discussed, the evidentiary rulings made by the trial court were either proper or well within the court's discretion. Where a movant fails to identify any evidentiary rulings which were either an abuse of discretion or error of law, logic necessarily dictates that a new trial is not required. See *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 822 (2008). Reviewing courts are not concerned that parties receive an error-free trial; rather, our concern is that plaintiffs receive a fair trial, which is to say one free of substantial prejudice. *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 184 (1994). A new trial is necessary when the cumulative effect of trial errors so deprives a party of a fair trial that the verdict might have been affected. *Mueller v. Phar-Mor, Inc.*, 336 Ill. App. 3d 659, 670 (2000). Upon reviewing the record in this case, we cannot say that any cumulative effect exists in this case. Wedeking received a fair trial where he was free to present his case within the proper bounds set by the trial court's rulings. Wedeking has failed to show that any error or multiple errors prejudiced his case such that a new trial is required.

¶ 94                              B. Sanctions

¶ 95     Finally, Wedeking contends that the trial court abused its discretion in granting in part ICRR's posttrial motion for Rule 137 and Rule 219(c) sanctions. Wedeking contends that there is no precedent in Illinois for sanctioning an attorney for failing to call Rule 213(f)(2) witnesses that had been disclosed, and that his witness disclosures were not made for an improper purpose. ICRR maintains that the trial court properly sanctioned Wedeking for failing to call seven Rule 213(f)(2) witnesses that had been disclosed because he did not conduct a reasonable inquiry before disclosing them. ICRR also maintains that the allegedly fabricated disclosures were made with the improper purpose of incurring unnecessary costs.

¶ 96                          1. Rule 137 and Rule 219(c) Sanctions

¶ 97     Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) requires that every pleading, motion and other document of a party represented by an attorney be "signed by at least one attorney of record," which "constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and *** that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 137 also states that if a document is signed in violation of this rule, the court may impose upon the person who signed it, a represented party, or both, "an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing" of the document. *Id.* In order to allow courts to conduct an informed and reasoned review of the sanction decision, Rule 137 requires that the trial court set forth with specificity the reasons and basis of any sanction imposed in the judgment order or a separate written order. Ill. S. Ct R. 137(d) (eff. Jan. 1, 2018).

¶ 98    Illinois Supreme Court Rule 219(c) (eff. July 1, 2022) governs noncompliance with court orders and rules, providing in relevant part that if a party unreasonably fails to comply with discovery rules, the court may impose upon the party or his attorney, or both, an "appropriate sanction." An appropriate sanction may include an order to pay the other party the amount of reasonable expenses incurred as a result of the misconduct. *Id.* Additionally, the Rule states:

> "Where a sanction is imposed under this paragraph (c), the judge shall set forth with
>
> specificity the reasons and basis of any sanction so imposed either in the judgment
>
> order itself or in a separate written order." Ill. S. Ct. R. 219(c) (eff. July 1, 2002).

¶ 99    The decision to impose sanctions under either Rule 137 or Rule 219(c) is within the discretion of the trial court and we will not reverse that decision absent a clear abuse of discretion. *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47; *Obermeier v. Northwestern Memorial Hospital*, 2019 IL App (1st) 170553, ¶ 127.

¶ 100                              2. Rule 213(f)(2) Disclosures

¶ 101   Illinois Supreme Court Rule 213(f)(2) (eff. Jan. 1, 2018) provides in pertinent part that a party must furnish the identities and addresses of independent expert witnesses who will testify at trial and must identify the subjects on which the witness will testify and the opinions the party expects to elicit. "An answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." *Id.*

¶ 102   Rule 213 requirements are mandatory and subject to strict compliance by the parties. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). Rule 213 permits litigants to rely on the disclosed opinions of opposing experts and to construct their trial strategy accordingly. *Id.*; *Firstar Bank of Illinois v. Peirce*, 306 Ill. App. 3d 525, 532 (1999). "The supreme court rules represent

this court's best efforts to manage the complex and important process of discovery. One of the purposes of Rule 213 is to avoid surprise." *Id.* at 109-10. To allow either side to ignore Rule 213's plan language defeats its purpose and encourages tactical gamesmanship. *Id.*

¶ 103    This court has noted that Rule 213 "brings to a trial a degree of certainty and predictability that furthers the administration of justice. The rule should be enforced by trial judges." *Peirce*, 306 Ill. App. 3d at 536. Where a party fails to comply with the provisions of Rule 213, "a court should not hesitate sanctioning the party, as Rule 213 demands strict compliance." *Id.* at 533 (quoting *Warrender v. Millsop*, 304 Ill. App. 3d 260, 268 (1999)).

¶ 104    Typically, Rule 213(f)(2) disclosure sanctions are imposed when a party calls a witness to testify at trial that the party had not previously disclosed as a Rule 213(f)(2) witness during discovery, which results in surprise and prejudice to the other party at trial. See *Thomas v. Johnson Controls, Inc.*, 344 Ill. App. 3d 1026, 1032 (2003) (the purpose of discovery rules, governing the "timely disclosure of expert witnesses, their opinions, and bases for those opinions is to avoid surprise and to discourage strategic gamesmanship"). In the case at bar, however, the trial court stated in its order that for "the reasons set forth in [ICRR]'s motion, and for the reasons stated in open court," the motion for sanctions was granted. It also ordered Wedeking "and/or his attorneys" to pay ICRR "for the Rule 213(f)(2) witnesses [Wedeking] did not call to testify at trial."

¶ 105    Rule 219(c) and Rule 137(d) specifically states that where a sanction is imposed under this Rule, "the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate order." Ill. S. Ct. R. 219(c) (eff. July 1, 2002); Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018). We recognize that some courts have relaxed this requirement, holding that when a trial court's contempt or sanction order was entered in accord with a written motion, or where the reasons can be surmised from the record, an appellate court

can affirm a trial court order that does not set forth its specific reasons in writing. See, *e.g.*, *Illinois Emcasco Insurance Co. v. Nationwide Mutal Insurance Co.*, 393 Ill. App. 3d 782, 790 (2009); *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39, 68 (208). However, we agree with *McGary v. Illinois Farmers Insurance*, 2016 IL App (1st) 143190, ¶ 47, where this court stated:

> "We interpret supreme court rules the same way we interpret statutes, and give their language the plain and ordinary meaning. The rules should not be interpreted in a way that renders their terms meaningless or superfluous. Further, specific requirements in supreme court rules cannot be selectively ignored. [Citations omitted]"

We further noted in *McGary* that "[t]he purpose of Rule 219(c) is to inform the parties of the reasoning for the trial court's decision and to make a record for appellate court review," and "written reasons promote respect and trust in the efficacy of an order of contempt or an order of sanctions, both serous remedial tools." *Id.* ¶ 48.

¶ 106   Here, the only enumerated reason given by the trial court in its sanction award order was "for the Rule 213(f)(2) witnesses [Wedeking] did not call to testify at trial." We, like Wedeking, have failed to find precedent for sanctioning a party for failing to call certain witnesses it had disclosed as Rule 213(f)(2) witnesses during discovery. In fact, case law seems to support the opposite conclusion. See *Wilkerson v. Pittsburgh Corning Corp.*, 276 Ill. App. 3d 1023, 1030 (1995) ("Requiring a party to call all previously disclosed expert witnesses would unnecessarily prolong the trial and unnecessarily increase expenses."). This is not a case that warrants sanctions, and we can find nothing in the record to suggest that Wedeking or his attorney disclosed Rule 213(f)(2) witnesses for an improper purpose. Accordingly, we find that the trial court abused its discretion in imposing sanctions for Wedeking's failure to call Rule 213(f)(2) witnesses that had

27

been disclosed during discovery. See *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies, Corp*., 315 Ill. App. 3d 238, 244 (2000) ('[w]hen reviewing a decision on a motion for sanctions, the primary consideration is whether the trial court's decision on a motion for sanctions was informed, based on valid reasoning, and follows logically from the facts."). We reverse the award of sanctions.

¶ 107                                    III. CONCLUSION

¶ 108   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, and reverse the June 21, 2022, sanctions order.

¶ 109   Affirmed in part; reversed in part.